478

Theodore A. PETERSON and Doris M.
Peterson, Plaintiffs,

v.

Richard P. VINAL, Defendant.

Civ. No. 01596.

United States District Court
D. Nebraska.
Jan. 8, 1964.

Joseph Vinardi, William Day, Omaha,
Neb., and A. W. Storms, Holdrege, Neb.,
for plaintiffs.

Burton A. Schwalb, Tax Division,
Dept. of Justice, Washington, D. C., for
defendant.

ROBINSON, Chief Judge.

This is a civil action for the refund of
federal income taxes and interest which
were assessed against and paid by the
plaintiffs for the year 1958. The defend-
ant is the District Director of Internal
Revenue for the District of Nebraska to
whom the income taxes and interest were
paid. The Court has jurisdiction under
Title 28 U.S.C. § 1340.

Dr. Theodore A. Peterson, and his wife
Doris have filed joint federal income tax
returns for the years 1952 through 1958.
(T-2).

Dr. Peterson, during the year in ques-
tion, 1958, and for many years prior
thereto was engaged in the practice of
medicine, and he also conducted an ex-
tensive cattle grazing operation. He al-
so did some farming, and had business
and real estate interests.

It was Dr. Peterson's guess that in
1950 and 1951 he had two or three hun-
dred cattle and that in 1958 the herd
probably ran between eight hundred and
one thousand. (T-4, T-9).

He owned over ten widely scattered
tracts of land in the general vicinity of
Holdrege, Nebraska. A considerable por-
tion of this land was in and on either side
of the Platte River. (Pl. Ex. I). In
1958 he had a cattle operation on seven
or eight of these places. (T-17). He
leases some land and on other land he
merely rents the right to have his cattle
eat the crop that happens to be there
like corn stalks. (T-77). These op-
erations were scattered throughout two
counties in 1958. (T-77). He thinks
the range would be probably within a
range of almost 25 to 30 miles. (T-66).
The cattle were moved about from one
piece of land to another depending on
the feeding requirements. (T-4).

Dr. and Mrs. Peterson's 1958 re-
turn showed income from the sale of live-

stock of $120,713.81, and a deduction of $66,207.87 for "Cost of Livestock Sold." (Pl. Ex. H). The amount of $66,207.87 consisted of the cost of livestock purchased by the taxpayers from September 1, 1957 to September 1, 1958. It was Dr. Peterson's understanding that this method of computing the "cost of livestock sold" had been previously authorized by an employee of Internal Revenue Service. (T–15).

In 1960, as a result of an audit of the Petersons' 1958 return, the Internal Revenue Service proposed to reduce the "Cost of Livestock Sold" by $22,051.07 on the grounds that $7675.00 was the cost of breeding stock included and $14,-376.07 was the cost of livestock which was not sold during the year. (Pl. Ex. J).

Plaintiff in his reply brief admits that the deduction claimed, that is $66,207.-87, is equivalent to the cost of livestock purchased from September 1, 1957 through August 31, 1958, and further admits that livestock costing some $22,-051.07 were bought before September 1, 1958, and not actually sold during 1958, but does not admit that the mathematical difference between these two figures, that is, $44,156.80 represents the actual cost of all livestock actually sold during 1958.

The taxpayers appear to have been on a cash receipts and disbursements method of accounting during the year 1958.

We agree with the defendant that the Commissioner properly disallowed deductions taken in 1958 for the purchase price of livestock which were not actually disposed of in 1958, in the amount of $22,051.07. 26 CFR, § 1.61.4.

Plaintiffs contend that Mr. William B. Rumbolz, a supervisory employee of the Internal Revenue Service, at an informal conference in January 1956 regarding the Petersons' 1952 and 1953 returns, authorized a system of reporting "cost of livestock sold" whereby the taxpayers would report all of the livestock purchased in the last four months of the year preceding the taxable year and the first eight months of the taxable year as the cost of livestock sold in the taxable year without reference to when the purchased livestock was actually sold. The evidence regarding this contention is conflicting but we conclude that the evidence preponderates in favor of a finding that Mr. Rumbolz did not so authorize a system of reporting "cost of livestock sold," and a finding that Dr. Peterson and Willard Peterson, his accountant, mistakenly understood that Mr. Rumbolz authorized such a system.

26 CFR, § 1.61.4 provides that the profit from the sale of livestock is to be ascertained by deducting the cost [or adjusted basis] from the sales price in the year in which the sale occurs. Treasury regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes; they constitute contemporaneous constructions by those charged with administration of these statutes which should not be overruled except for weighty reasons. See Commissioner of Internal Revenue v. South Texas Company, 333 U.S. 496, 501, 68 S.Ct. 695, 92 L.Ed. 831 [1948]. This appears to be a reasonable regulation and we are unaware of any conflict between the regulation and the Internal Revenue Code. Under § 446 of the 1954 Code, the Commissioner has broad discretion in determining proper methods of accounting. An administrative board's interpretation of the statute and the practice adopted by it should not be interfered with unless clearly unlawful. See Lucas v. American Code Co., 280 U.S. 445, 449, 50 S.Ct. 202, 74 L.Ed. 538 [1930]. The United States Court of Appeals, Eighth Circuit, has stated in United States v. Ekberg, 8 Cir., 291 F.2d 913, 921 [1961],

"We have recently reiterated, with supporting citations, that administrative construction of a statute is entitled to great weight; that regulations are to be sustained unless unreasonable and plainly inconsistent with the statute; that one who claims that a regulation is invalid has the heavy burden of so demonstrating; that regulations, however,

cannot be arbitrary; and that they must have a basis in the statute and be within the authority granted the administrative agency. * * *"

Plaintiffs argue that their approach to the determination of cost of livestock sold is under the circumstances the best obtainable and most reasonable evidence of the actual cost of livestock sold. Dr. Peterson, for taxable years before 1952, had deducted the cost of livestock in the year of purchase; (plaintiffs' brief, page 12) for taxable year 1958, and years immediately preceding, taxpayers used the arbitrary method of determining "cost of livestock sold" which they thought that Mr. Rumbolz had authorized. Taxpayers do not contend that the latter method, which was used by them in 1958 is a literal compliance with 26 CFR, § 1.61–4, supra. Rather, they contend that it is the best reasonable estimate obtainable under the circumstances. We are not satisfied that the taxpayers have established this contention. Although it would involve more expense than the system used in 1958, and although the identification would be lost in many cases, nevertheless the animals ears could be cut or tagged for purpose of identification. However, taxpayers appear to contend that, because of their unique operation, identification for cost purposes is not feasible. We do not think that they have established this contention, especially in the absence of a showing that they have tried to keep a record of cost of each animal. There is nothing in the record to show that this attempt has been made. A system of keeping records of cost would probably be imperfect, but plaintiffs have not shown that the cut off system is better.

Plaintiffs, although admitting that the deduction claimed, $66,207.87, is equivalent to the cost of livestock purchased from September 1, 1957, through August 31, 1958, and that livestock costing $22,-051.07 were bought before September 1, 1958, and not actually sold during 1958, nevertheless deny that the mathematical difference between these two figures, $44,156.80, represents the cost of live-stock actually sold during 1958. Rather, on the basis of Cohan v. Commissioner of Internal Revenue, 2 Cir., 39 F.2d 540 [1930] and Estate of William C. Shore, T.C.Memo 1956–75, they contend that the record amply sustains their estimate of $66,207.87 as the cost of livestock sold during 1958. Those cases involve the question of whether a taxpayer keeping inadequate records should be allowed no deduction at all, or should be allowed a deduction based on an estimate of expenses on the basis of the evidence. It is noteworthy, that the Court in Cohan stated,

" * * * the Board should make as close an approximation as it can, bearing heavily if it chooses upon the taxpayer whose inexactitude is of his own making. * * *"

and that the Court in Shore stated,

" * * * Using our best judgment, on the entire record before us, and bearing heavily on petitioner for his failure of proof, we have allowed petitioner a deduction of. * * *"

The United States Court of Appeals Eighth Circuit, has recently commented on Cohan in Oates v. C. I. R., 8 Cir., 316 F.2d 56, 59 [1963],

"Taxpayer strongly urges that under the rule of Cohan v. Commissioner, 2 Cir., 39 F.2d 540, he is entitled to substantial relief despite the fact that he is unable to prove his adjusted basis. We believe that considerable discretion exists in the application of the Cohan rule, and that such rule should be applied only in cases where the taxpayer has clearly shown that he is entitled to some deduction and that uncertainty exists only as to the exact amount thereof."

Plaintiffs contend that allowed costs for 1956 amounted to some 54.5% of sales, that allowed costs for 1957 went to some 67.5% of sales, and that claimed costs for 1958 came to 54.9% of sales and that thus the claimed costs for 1958 are well within the range of the allowed and unchallenged costs deducted for 1956 and

1957.   The weakness in this contention, however, is that the 1956 and 1957 costs would have been based on the same September 1 cut-off date system which was used in 1958.

We conclude that the taxpayers have not sustained their burden of proving that they are entitled to an additional deduction of $22,051.07 as the cost of livestock sold in 1958.

The foregoing shall constitute the Court's findings of fact and conclusions of law under Rule 52, Federal Rules of Civil Procedure.   Judgment will be in favor of the defendant dismissing the plaintiffs' complaint.   Counsel for the defendant will prepare and submit a form of judgment within 15 days.