IN RE RULES AND REGULATIONS NOS. 31 AND 32.
NEBRASKA PUBLIC SERVICE COMMISSION, APPELLEE, V.
CHICAGO & NORTH WESTERN TRANSPORTATION COMPANY, A
CORPORATION, ET AL., APPELLANTS.
225 N. W. 2d 401

Filed January 30, 1975. No. 39448.

Harry B. Otis, Richard Knudsen, C. Arlen Beam, Robert Skochdopole, and John J. Burchell, for appellants.

. Clarence A. H. Meyer, Attorney General, and Chauncey C. Sheldon, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

WHITE, C. J.

On October 5, 1973, the Nebraska Public Service Commission enacted and promulgated its Rules and Regulations Nos. 31 and 32 setting up emergency powers in the Commission and standards relating thereto, which regulated the distribution of railroad grain cars by railroads to shippers in Nebraska. The question involved in this case is the constitutionality of these two rules and regulations under the supremacy and commerce clauses of the federal Constitution (Art. IV, § 2, and Art. I, § 8, of the Constitution of the United States). We hold that the state's power to regulate this aspect of interstate commerce has been preempted by the Congress through the Interstate Commerce Act, Title 49 U. S. C., section 1 (1) through (17), and accordingly Rules 31 and 32 are an unconstitutional exercise of state power.

Rule 31 provides as follows: "Whenever the Commission (Nebraska Public Service Commission) is of the opinion that shortage of equipment, congestion of traffic or other emergency requiring immediate action exists, the Commission shall have and is hereby given authority either upon complaint or upon its own motion without complaint, at once, if it so orders, without answer or other formal pleading by the interested carriers or carrier and without notice, hearing or making or filing of a report as the Commission may determine (A) to suspend the operation of any or all Commission rules, regulations, or practices then established with respect to car service for such time as may be determined by the Commission (B) to make such just and reasonable order with respect to car service during such emergency that will promote the service in the interest of the public and commerce of the people."

The Interstate Commerce Act, Title 49 U. S. C., section 1(15), states: "Powers of Commission in case of emer-

gency. Whenever the Commission is of opinion that shortage of equipment, congestion of traffic, or other emergency requiring immediate action exists in any section of the country, the Commission shall have, and it is given, authority, either upon complaint or upon its own initiative without complaint, at once, if it so orders, without answer or other formal pleading by the interested carrier or carriers, and with or without notice, hearing, or the making or filing of a report, according as the Commission may determine: (a) to suspend the operation of any or all rules, regulations, or practices then established with respect to car service for such time as may be determined by the Commission; (b) to make such just and reasonable directions with respect to car service without regard to the ownership as between carriers of locomotives, cars, and other vehicles, during such emergency as in its opinion will best promote the service in the interest of the public and the commerce of the people, upon such terms of compensation as between the carriers as they may agree upon, or, in the event of their disagreement, as the Commission may after subsequent hearing find to be just and reasonable; * * *."

More precisely, the question presented is whether Congress has "preempted" the area of regulation of the distribution of railroad grain cars to shippers in the State of Nebraska. At the outset we point out it is well-settled law that all federal regulations done in pursuance of one of Congress' delegated powers are capable of preempting any state legislation or regulation on the same subject. The commerce clause of the Constitution of the United States delegates to Congress the power to regulate interstate commerce; this power is plenary in nature and has been held to embrace matters which are intrastate in nature but which affect interstate commerce. The Minnesota Rate Cases, 230 U. S. 352, 33 S. Ct. 729, 57 L. Ed. 1511 (1913); Gibbons v. Ogden, 9 Wheat. 1, 22 U. S. 1, 6 L. Ed. 23 (1824). As to the extent

of federal preemption, the determination does not await any actual operational conflict in the area of operations and actual frustration is not a criterion of preemption. The extent of federal preemption is determined by an inquiry into the *congressional intent* underlying the federal law. Atchison, Topeka & Santa Fe Ry. Co. v. Railroad Commission, 283 U. S. 380, 51 S. Ct. 553, 75 L. Ed. 1128 (1931); Napier v. Atlantic Coast Line R. R. Co., 272 U. S. 605, 44 S. Ct. 207, 71 L. Ed. 432 (1926); Savage v. Jones, 225 U. S. 501, 32 S. Ct. 715, 56 L. Ed. 1182 (1912). In Savage v. Jones, *supra,* the general principle is stated: "For when the question is whether a Federal act overrides a state law, the entire scheme of the statute must of course be considered and that which needs must be implied is of no less force than that which is expressed. If the purpose of the act cannot otherwise be accomplished—if its operation within its chosen field else must be frustrated and its provisions be refused their natural effect—the state law must yield to the regulation of Congress within the sphere of its delegated powers."

The fact that the power delegated to the ICC has not been exerted is without legal significance. The fact that the ICC has not seen fit to exercise its authority to the full extent conferred has no bearing upon the construction of the act delegating the power. The question is whether the federal act was *intended* to occupy the field. Napier v. Atlantic Coast Line R. R. Co., *supra;* (Opinion by Brandeis, J.). See, also, Frontier Airlines Inc. v. Nebraska Department of Aeronautics, 175 Neb. 501, 122 N. W. 2d 476 (1963).

In our view, Congress intended in the enactment of Title 49 U. S. C., section 1(15), that the exclusive power is vested in the ICC to regulate the distribution of railroad cars and to suspend administrative order-making due process pursuant to a declaration of emergency because of equipment shortage, priorities in use on a national level, or congestion. On its face and by its terms, Rule 31 in verbatim language, purports and intends to

vest in the Nebraska Public Service Commission concurrent emergency power over the distribution of railroad grain cars or boxcars with that of the ICC. It attempts to assume or assert the same emergency power already enacted and delegated to the ICC by Congress and in full force and effect at the time of the promulgation of Rule 31. The movement and assignment of railroad grain cars on the railroads while operating in the State of Nebraska is unquestionably interstate commerce, whether the destination is intrastate or beyond the borders of the state. The record reflects that the overwhelming majority of railroad grain cars in Nebraska have outstate destinations. In this context Rule 31 can only be implemented in such a way as to frustrate, confuse and conflict with the identical ICC emergency power. The danger of directly contradictory simultaneous application of state and federal regulations by two separate entities which frustrates the effectiveness of the federal law lends support to the clear inference that the federal law was intended to exclude emergency state regulations. See, Amalgamated Assn. of Street Electric Ry. & Motor Coach Employees of America v. Lockridge, 403 U. S. 274, 91 S. Ct. 1909, 29 L. Ed. 2d 473 (1971); Brotherhood of R. R. Trainmen v. Jacksonville Terminal Co., 394 U. S. 369, 89 S. Ct. 1109, 22 L. Ed. 2d 344 (1969).

We point out that by the terms of Title 49 U. S. C., section 1(15), Congress lodged with the ICC, in effect, the power to declare an emergency in the area of boxcar shortage, distribution or congestion, and secondly, the power to *refuse* to declare such an emergency. These powers are, of course, exercisable by the ICC whether the emergency is localized only in Nebraska, or whether it exists wholly outside the State of Nebraska, or in both Nebraska and in other states. It is clear from an examination of Title 49 U. S. C., section 1(15), and the other related sections in Title 49, that Congress intended that the ICC must be left to regulate car service free of any possible state interference. For example, if the ICC

determined a national emergency existed which required that all available boxcars for shipment of perishable fruit be in some other state, the operation of Rule 31 would clearly frustrate the implementation of the ICC's emergency power.

We point out further that it is in the nature of emergency power which should be exercised by only one paramount authority. Unity in the control of emergency situations is not only common sense but is fundamental to the effective exercise of such power. Implicit in the grant to ICC of emergency powers is the implied power to determine that a particular subject or a particular geographical area remain unregulated, that it surely was the intent of Congress that the various state public service commissions must not be allowed to contradict or undermine this determination. See, Napier v. Atlantic Coast Line R. R. Co., *supra*; Pennsylvania R. R. Co. v. Public Service Commission of the Commonwealth of Pennsylvania, 250 U. S. 566, 40 S. Ct. 36, 63 L. Ed. 1142 (1919).

We come to the conclusion that the Congress, by the enactment of Title 49 U. S. C., intended that the power to declare and regulate emergencies rests solely with the ICC and that Title 49 U. S. C., section 1(15), has preempted the state's purported exercise of concurrent power under Rule 31. Accordingly we hold that Rule 31 is unconstitutional and void under the supremacy and commerce clauses of the Constitution of the United States.

We turn now to an examination of Rule 32, as adopted by the Nebraska Public Service Commission. It provides:

"I.

"It is the *duty* of each and every *railroad* in the State of Nebraska to furnish to *any* shipper who makes a legitimate demand therefore, *at the time and at the station demanded by such shipper,* such number and type of cars as the shipper may require. To this end the rail-

road company or companies should make every reasonable and possible effort to supply all their customers with all such cars as and when demanded and required.

"II.

"When the supply of cars is not sufficient to meet the demands of all shippers, available cars will be distributed in the following manner:

"Each shipper will be placed in a category outlined below based on the average yearly number of cars shipped in the three (3) calendar years preceding the year in which the order for cars is placed.

"'A' 500 or more cars annually
"'B' 400 or more cars annually
"'C' 300 or more cars annually
"'D' 200 or more cars annually
"'E' Less than 200 cars annually
"'F' Less than 100 cars annually

"Cars available for distribution will be distributed beginning with the shippers in the 'A' category so that each shipper receives cars in proportion to past volume.

"Provided no shipper will be deprived of its share of cars because the shipper is located on a branch line receiving less than daily service. * * *

"IV.

"Provided, that no shipper shall be deprived of his due proportion of cars under these sections.

"V.

"No deviation from this policy will be allowed unless first authorized by this Commission." (Emphasis supplied.)

The relevant portions of the Interstate Commerce Act, Title 49 U. S. C., section 1(1), et seq., are as follows:

"§1. Regulation in general; *car service*; alteration of line. (1) Carriers subject to regulation. The provisions of this chapter shall apply to common carriers engaged in—

"(a) The transportation of passengers or property wholly by railroad, or partly by railroad and partly by

water when both are used under a common control, management, or arrangement for a continuous carriage or shipment; * * *

"From one State or Territory of the United States, or the District of Columbia, to any other State or Territory of the United States * * *.

"(.10) 'Car service' defined. The term 'car service' in this chapter shall include the *use, control, supply, movement, distribution, exchange, interchange,* and return of locomotives, cars, and other vehicles used in *the transportation of property,* including special types of equipment and the supply of trains, by any carrier by railroad subject to this chapter.

"(11) Duty to furnish car service; rules and regulations.

"*It shall be the duty of every carrier by railroad subject to this chapter to furnish safe and adequate car service and to establish, observe, and enforce just and reasonable rules, regulations, and practices with respect to car service; and every unjust and unreasonable rule, regulation, and practice with respect to car service is prohibited and declared to be unlawful.* * * *

"(14) Establishment by Commission of rules, etc., as to car service.

"(a) The Commission may, after hearing, on a complaint or upon its own initiative without complaint, establish reasonable rules, regulations, and practices with respect to car service by common carriers by railroad subject to this chapter, * * *

"(17) Directions of Commission as to car service; disobedience; rights of States; bribery.

"(a) The directions of the Commission as to car service and to the matters referred to in paragraphs (15) and (16) of this section may be made through and by such agents or agencies as the Commission shall designate and appoint for that purpose. It shall be the duty of all carriers by railroad subject to this chapter, and of their officers, agents, and employees, to obey strictly

and conform promptly to such orders or directions of the Commission, and in case of failure or refusal on the part of any carrier (it shall be penalized) * * *. Provided, however, that nothing in this chapter shall impair or affect the right of a State, in the exercise of its police power, to require just and reasonable freight and passenger service for intrastate business, except insofar as such requirement is inconsistent with any lawful order of the Commission made under the provisions of this chapter and except as otherwise provided in this chapter." (Emphasis supplied.)

Clearly the term "car service" as used in Title 49 U. S. C., section 1(10), embraces the subject of Rule 32. And clearly the congressional intent to occupy and preempt the whole field of car service is imported in the broad-ranging definition of the term, which says that it "shall include the use, control, supply, movement, distribution, exchange, interchange, and return of locomotives, cars, and other vehicles used in the transportation of property, including special types of equipment * * *." Just as clearly, Congress delegated, under the supervision of the ICC, the power and the duty of every carrier by railroad to furnish safe and *adequate car service and to establish, observe, and enforce just and reasonable rules, regulations, and practices with respect to car service.* And just as clearly the very nature of this action and the record herein demonstrates the reality of the conflicts between the enforcement of the intrastate standards and regulations and the rules and regulations of the carriers established under subsection (11) of the act and required to be enforced by them, absent emergency change by the ICC itself. We feel that the intention of Congress to occupy and preempt the field of car service, and to eliminate the chaotic condition of separate and conflicting control by the public service commissions of the various states, is obvious. This intention not only appears from the precise language and the directives for control in the language of the act,

but it is responsive to the very nature of a railroad box-car shortage on interstate carriers which demands uniform and national regulation, and which can only be accomplished by the exercise of federal power over interstate commerce. The frustration and chaos of concurrent, permissive control by conflicting and competing regulations of the different states is apparent.

Decisive, if not conclusive, of the issue before us is the pronouncement of the United States Supreme Court in Chicago, R. I. & P. Ry. Co. v. Hardwick Farmers Elevator Co., 226 U. S. 426, 33 S. Ct. 174, 57 L. Ed. 284 (1913), wherein the court in pronouncing upon a Minnesota regulation substantially comparable in effect to Rule 32 said as follows: "As legislation *concerning the delivery of cars for the carriage of interstate traffic* was clearly a matter of interstate commerce regulation, even if such subject was embraced within that class of powers concerning which the State had a right to exert its authority in the absence of legislation by Congress, it must follow in consequence of the action of Congress to which we have referred that the power of the State over the subject-matter ceased to exist *from the moment that Congress exerted its paramount and all embracing authority over the subject.* We say this because the elementary and long settled doctrine is that there can be *no divided* authority over interstate commerce and that the regulations of Congress on that subject are supreme. It results, therefore, that in a case where from the particular nature of certain subjects *the State may exert authority until Congress acts under the assumption that Congress by inaction had tacitly authorized it to do so, action by Congress destroys the possibility of such assumption, since such action, when exerted, covers the whole field and renders the State impotent to deal with a subject over which it had no inherent but only permissive power.* Southern Ry. Co. v. Reid, 222 U. S. 424." (Emphasis supplied.)

In St. Louis, I. M. & S. Ry. Co. v. Edwards, 227 U. S.

265, 33 S. Ct. 262, 57 L. Ed. 506 (1913), the Supreme Court of the United States held that state actions designed to improve car supply "were not enforceable because of a want of power in the State to impose them" in view of the fact that Congress had legislated on the subject. And in Missouri Pacific R. R. Co. v. Stroud, 267 U. S. 404, 45 S. Ct. 243, 69 L. Ed. 683 (1925), the Supreme Court held that "state law has no application to the furnishing of cars to shippers. * * * in interstate commerce," because Congress in the exertion of its power over commerce among the states has enacted comprehensive laws for the regulation of the furnishing of cars to shippers.

The argument that the proviso in Title 49 U. S. C., section 1(17)(a), stating that ICC regulations shall not impair or affect the right of a state, in the exercise of its police power, to require just and reasonable *freight* and passenger service for intrastate business, has been rejected. Power is reserved to the states regarding only passenger and freight service, and *not* as to car service. "Car service" connotes the use to which the vehicles of transportation are put; not the transportation service by means of them. Peoria & P. U. Ry. Co. v. United States, 263 U. S. 528, 44 S. Ct. 194, 68 L. Ed. 427 (1924). And more recently in Chicago, M. St. P. & P. R. Co. v. McCree & Co., 91 F. Supp. 57 (D. Minn., 1950), it was held that limitations in the act on the powers of the commission over intrastate transportation service and intrastate freight and passenger rates cannot be read as limiting the powers of Congress over "car service" of carriers subject to the act.

Our own court recently held in Frontier Airlines, Inc. v. Nebraska Department of Aeronautics, 175 Neb. 501, 122 N. W. 2d 476 (1963), as follows: "In 11 Am. Jur., Commerce, § 10, p. 12, it is said: 'It has repeatedly been held by the courts that where a subject is national in its character and admits and requires uniformity of regulation, affecting alike all the states, such as transporta-

tion between the states, including the importation of goods from one state to another, Congress alone can provide the needed regulations. In such a case the Federal power is exclusive, and the states may not act even though Congress has not exerted its legislative authority, the silence of Congress being equivalent to a declaration that the particular commerce shall be free from regulation." (Emphasis supplied.)

Consequently, we hold that both Rules 31 and 32 are void and unconstitutional because the power of the Nebraska Public Service Commission in the area of the distribution of railroad cars has been preempted by congressional action under the commerce clause in the Interstate Commerce Act, Title 49 U. S. C., section 1(1) through (17).

In light of our decision, it becomes unnecessary to consider the other arguments and contentions of the parties herein. The action of the Nebraska Public Service Commission in the enactment and promulgation of Rules 31 and 32 is reversed.

REVERSED.