HERBERT SHERDON, DIRECTOR, COMMUNICATIONS AND ACCOUNTING DEPARTMENT, NEBRASKA PUBLIC SERVICE COMMISSION, APPELLEE, V. JERRY DANN ET AL., APPELLANTS, NEBRASKA LODGING ASSOCIATION, INTERVENER-APPELLEE.
229 N. W. 2d 531

Filed May 15, 1975. No. 39650.

Einar Viren of Viren, Epstein & Leahy, for appellants.

Clarence A. H. Meyer, Attorney General, Chauncey C. Sheldon, and W. James Wochner, for appellee.

Charles P. Huff of Davis, Polsky, Hull & Denny, for intervener-appellee.

Bert L. Overcash of Woods, Aitken, Smith, Greer, Overcash & Spangler, for amicus curiae.

Heard before WHITE, C. J., BOSLAUGH, McCOWN, and NEWTON, JJ., and STUART, District Judge.

McCOWN, J.

This proceeding before the Nebraska Public Service Commission was instituted by an agent of the commission against the defendants, Jerry Dann and Willard Friedman, doing business as Ben Franklin Motel. The complaint alleged that the defendants were offering telephone service to the public for hire without having obtained a certificate of public convenience and necessity therefor, in violation of section 75-604, R. R. S. 1943. The Nebraska Public Service Commission found that the defendants' actions were in violation of section 75-604, R. R. S. 1943, and ordered the defendants to cease and desist from offering telephone service without a certificate of public convenience and necessity. The defendants have appealed.

In January of 1972, in connection with the construction of a motel on the Interstate Highway near Omaha, the defendants leased from RCA Service Company a complete telephone interconnection system to be installed in the new motel building. The motel began operations in the summer of 1972, and was a telephone customer of Northwestern Bell, the certificated telephone company furnishing exchange telephone service to the public for the area in and near Omaha, Nebraska. From the beginning defendants made no charge to guests for any local calls, but during 1972 and 1973, the motel did make a 20 cent charge to its guests for each interstate or intrastate toll call. Beginning January 1, 1974, how-

ever, all charges to guests for intrastate or interstate long distance toll calls were discontinued and thereafter no charges were made to guests for telephone calls except for the amount of the regular toll charges of Northwestern Bell. The telephone equipment leased by defendants from RCA and installed in defendants' motel building was interconnected to Northwestern Bell under tariffs filed by Northwestern Bell with the Federal Communications Commission and the Nebraska Public Service Commission. The federal tariff applied to interstate and foreign communications, and the Nebraska tariff applied to intrastate communications. Both tariffs apply to the interconnection and use of customer-owned or customer-provided in-house telephone facilities and equipment. The tariffs of Northwestern Bell containing the regulations and charges for such connections were each approved by the respective commissions. The operations challenged here have been under the authorization of those tariffs.

In the summer of 1973, the Nebraska Public Service Commission requested an opinion from the Attorney General of the State of Nebraska as to whether Nebraska certificated telephone companies could restrict and limit their interconnection service to interstate communications as required by rulings of the Federal Communications Commission but also prohibit intrastate use of such interconnection except as authorized by the Nebraska Public Service Commission. It also inquired whether the use of customer-provided in-house equipment for tenants and guests required a certificate of public convenience and necessity. An opinion by the Attorney General answered both questions affirmatively and advised that a customer-provided in-house system could not be maintained and operated by a motel without appropriate certification by the Nebraska Public Service Commission. It is important to note that under Nebraska statutes and decisions, no motel operator could ever obtain a certificate if there is a telephone com-

pany serving the area that is willing to furnish the equipment for the in-house system.

This action against the defendants was commenced October 29, 1973. Hearing was held on January 10, 1974. On April 15, 1974, the Nebraska Public Service Commission issued its opinion and findings. It found that the in-house communication system in the defendants' motel provided by RCA could not be maintained and operated without a certificate of public convenience and necessity from the Nebraska Public Service Commission, and ordered the defendants to cease and desist from offering such telephone service without a certificate of public convenience and necessity. The defendants' appeal here is from that order.

Additional background information is essential. Prior to 1968, most, if not all, telephone companies had filed tariffs which prohibited the connection or use of customer-owned or supplied devices or attachments, and restricted such equipment to that owned by the telephone company. In 1968, in Carterfone, 13 FCC 2d 420, the Federal Communications Commission held that an A. T. & T. tariff of that sort was unreasonable and unlawful in that it prohibited the use of interconnecting devices which did not adversely affect the telephone system. It adopted a court-approved rule that such a tariff prohibition was an "unwarranted interference with the telephone subscriber's right reasonably to use his telephone in ways which are privately beneficial without being publicly detrimental." The commission also pointed out that telephone companies were not precluded from adopting reasonable standards to prevent harmful interconnection. The new and revised tariffs filed by A. T. & T. following Carterfone, presently in effect, permit the interconnection and use of customer-provided terminal devices or communication systems to the telephone message toll and exchange network, subject to certain conditions. One such condition is that any network control signaling unit must be furnished, installed, and maintained by the

telephone company (with certain exceptions). This condition and other restrictions have been approved by the Federal Communications Commission as not in conflict with the Carterfone ruling. Because the Carterfone case and the implementing tariffs filed under it operate upon the terms and conditions under which the customer-owned or provided equipment may be connected to the telephone network and because that network is used in common for intrastate and interstate services, A. T. & T. recognized that uniform interconnection practices must apply to both interstate and intrastate services. Bell system companies therefore not only filed revised tariffs with the Federal Communications Commission but "also filed conforming revisions to their foreign attachment tariffs on file with the several state commissions applicable to intrastate services." Presumably Northwestern Bell's tariff here was filed with the Nebraska Public Service Commission in accordance with that policy. No carrier, state commission, or other party pursued judicial review of the Carterfone decision nor challenged the jurisdiction of the commission to make that ruling or to accept the tariffs filed in response thereto.

On September 7, 1973, the Federal Communications Commission instituted a proceeding on the question of whether and to what extent the actions taken by the commission on interconnection of customer-provided communications equipment to the nationwide switched public telephone network have preempted state action in this area. That action partially stemmed from the opinion of the Nebraska Attorney General heretofore referred to and a proposed rule of the North Carolina Utilities Commission which would generally prohibit interconnection of customer-owned or provided equipment to the commercial system of any telephone company doing business in that state. The opinion of the Federal Communications Commission was released on February 5, 1974. See In re Telerent Leasing Corp. FCC 74-109,

Docket No. 19808. It clearly upheld the priority and primacy of federal regulation over conflicting state regulations on interconnections, and specifically dealt with the Nebraska factual situation. The case is currently pending on appeal in the Fourth Circuit.

The real issue in the case before us involves the right of telephone customers to use customer-owned or customer-provided in-house telephone equipment and interconnect it to the exchange telephone system of the certificated telephone company. The state regulatory agencies take the position that they may directly or indirectly prohibit the connection of such customer-provided equipment for all intrastate communications, even though that action is directly contrary to valid and effective rules and regulations of the Federal Communications Commission. Federal law indisputably requires such interconnections to be permitted under reasonable specified conditions for all interstate and foreign communications. North Carolina takes the direct approach of proposing to adopt a rule prohibiting interconnection of customer-provided equipment for intrastate communications, directly contrary to the federal rules and regulations dealing with interstate and foreign communications. Nebraska, however, takes the indirect approach of attempting to block interconnection and use of customer-provided in-house communications systems in the case of hotels or motels upon the ground that they are providing telephone service for guests for hire without a certificate of public convenience and necessity. It ignores the practical fact that such a certificate cannot be obtained under current Nebraska law if the certificated carrier is willing to provide the equipment, which, of course, it is.

It is undisputed that Congress granted to the Federal Communications Commission the sole and exclusive jurisdiction over interstate and foreign telephone service, including jurisdiction to regulate interconnection of customer-provided equipment with common carrier facilities

for interstate and foreign service. It is also undisputed that the Federal Communications Act reserves to the states jurisdiction over intrastate telephone and telegraph communications. The telephone systems, regulated nationwide by the Federal Communications Commission, and statewide by various state regulatory agencies in each of the individual states, now constitute a unified and nationwide network of interconnected telephone exchanges. Telephone exchange plant facilities, particularly customer or subscriber stations and lines, including in-house systems such as are involved here, are used in common and indivisibly for all local and long distance telephone calls, and for both intrastate and interstate, as well as foreign commerce. The issue here is whether the Federal Communications Commission's exercise of jurisdiction to establish the rights of customers to use and interconnect customer-owned or provided in-house telephone facilities preempts conflicting and inconsistent state regulations. We believe that it does.

It is contended that Congress reserved to the states the exclusive right to regulate exchange and other intrastate telephone services, including the use of customer-owned equipment interconnected with such services, and that the states are not barred from taking action concerning customer interconnections, even though such action may derogate or conflict with the Federal Communications Commission rulings. There is no explanation as to the practical effects of such conflicting federal and state rulings except to suggest that separate facilities could be provided for interstate and intrastate services or that perhaps the Federal Communications Commission should simply defer to state commissions as to the appropriate ruling. Such a result is, we believe, legally, logically, and practically unsupportable.

It should be noted here that federal statutes have provided for the use of a federal-state joint board procedure to resolve separation matters with respect to telephone common carrier property. Those provisions were made

mandatory in 1971, and the amendments again stressed the primacy of federal jurisdiction by reserving to the Federal Communications Commission the final decision-making powers. Title 47 U. S. C. A., § 410 (c), of the Federal Communications Act. Currently the Federal Communications Commission has established a joint board pursuant to the provisions of section 410 to address itself to the question of whether customer interconnection should be liberalized beyond that currently permissible and, if so, what conditions, rules, regulations, and other requirements should be imposed in connection with such further liberalization. Interstate & Foreign MTS & WATS, 35 FCC 2d 539, 542.

Where the same instrumentalities serve both inter-state and intrastate commerce jointly, and the two cate-gories of service are as inextricably intertwined as they are here, the United States Supreme Court in related types of situations has consistently held that Congress has power to assume not only some control but para-mount control insofar as interstate commerce is involved, and that it may determine to what extent and in what manner intrastate service must be subordinated in order that interstate service may be adequately rendered. See Colorado v. United States, 271 U. S. 153, 46 S. Ct. 452, 70 L. Ed. 787. The Supreme Court, in dealing with the issue of federal regulation as preemptive of state regu-latory power in a particular field of commerce, has con-sistently held: "A holding of federal exclusion of state law is inescapable and requires no inquiry into congres-sional design where compliance with both federal and state regulations is a physical impossibility for one en-gaged in interstate commerce." Florida Lime & Avo-cado Growers, Inc. v. Paul, 373 U. S. 132, 83 S. Ct. 1210, 10 L. Ed. 2d 248.

The Supreme Court of Georgia likewise has adopted and applied the same principles in a conflict situation under the Federal Communications Act. The Federal Communications Commission granted an application by

Western Union to discontinue telegraph service on an intrastate line located solely in Georgia, which, together with an office, handled both interstate and intrastate messages. Thereafter the Georgia Public Service Commission obtained a judgment against Western Union on the ground that it had failed to get approval from the Georgia commission before abandoning intrastate service. The Supreme Court of Georgia held that Congress had preempted the area and said: "* * * the consequence of the State's position would mean that, for the telegraph company to comply with both Federal and State regulations, it would have to maintain two separate offices, one for interstate messages and another for intrastate service * * *. Such conflict of dual control would thwart one of the main purposes of the Communications Act, viz.; 'to make available as far as possible to all the people of the United States a rapid, efficient, Nation-wide, and world-wide wire * * * communication service with adequate facilities at reasonable charges.'" Western Union Telegraph Co. v. State, 207 Ga. 675, 63 S. E. 2d 878.

This court has very recently held that the commerce clause of the Constitution of the United States delegates to Congress the power to regulate interstate commerce, and that the power to regulate interstate commerce is plenary in nature and embraces matters which are intrastate in nature but which affect interstate commerce. Nebraska Public Service Commission v. Chicago & N. W. Transp. Co., *ante* p. 59, 225 N. W. 2d 401. In that case we said: "At the outset we point out it is well-settled law that all federal regulations done in pursuance of one of Congress' delegated powers are capable of preempting any state legislation or regulation on the same subject."

If Nebraska or any other state were to bar interconnection of customer-provided equipment for intrastate service in derogation of a federal rule, the telephone common carrier would be placed in the untenable posi-

tion of having to violate either the state ruling or the federal ruling. If each state were to be free to establish its own rules governing interconnection for the purposes of intrastate services, uniform, nondiscriminatory interstate services throughout the country would be made difficult, if not impossible. Because of the indivisibility of the nationwide telephone network, it is impossible from a practical, economic, and operating standpoint for a telephone common carrier to comply with conflicting federal and state regulations.

It should be noted further that under Title 3 of the Federal Communications Act, the Federal Communications Commission is given exclusive jurisdiction under the act to license radio facilities. In Nebraska, as in every other state, the telephone companies and many of their interconnecting customers are users of radio facilities, and as to all such facilities are subject solely to the regulatory jurisdiction of the Federal Communications Commission.

For the foregoing reasons we believe that the exercise of jurisdiction by the Federal Communications Commission over the terms and conditions governing the interconnection of customer-provided telephone equipment to the nationwide telephone network has established the primacy of federal authority and preempts conflicting or inconsistent state regulation. The decision of the Federal Communications Commission, FCC 74-109, Docket No. 19808, In re Telerent Leasing Corp. (released February 5, 1974), reflects its assertion of federal primacy in the area and should be followed until modified or withdrawn under appropriate federal judicial determination.

The action of the Federal Communications Commission does not foreclose any state from taking action of its own in the telephone interconnect area so long as such action does not derogate the interstate rulings. Neither the rulings or orders of the Federal Communications Commission on the interconnection issue nor any tariffs filed in compliance with them "prevent any State

from providing additional options to customers with respect to interconnection provided that they are alternatives to, rather than substitutes for, the requirements specified in the interstate tariffs, and provided further that such regulations accomplish the protective objectives of the interstate tariff regulations and in no way permit interference with or impairment of interstate services." See In re Telerent Leasing Corp., *supra* Neither does federal action in the interconnect area foreclose any state from the full exercise of its investigatory powers with respect to the effects of interconnection as related to the quality of telephone service or the regulation by the state of intrastate rate structures and revenue requirements for services subject to its jurisdiction.

Our ruling on the basic issue eliminates the necessity for extensive discussion of the order of the Nebraska Public Service Commission here. The actions of the defendant motel operators in operating an in-house telephone system are identical, whether the equipment and facilities in their building are owned by Northwestern Bell, or by RCA Service Company, or by the defendants themselves. To require the defendants to hold a certificate of public convenience and necessity for that operation if anyone other than Northwestern Bell owns the equipment is arbitrary as well as legally prohibited under federal regulations. It is equally arbitrary to permit the other 22 Nebraska customers of Northwestern Bell to operate in-house telephone systems of their own without a certificate, but to refuse to permit the defendants to operate their own in-house system solely because the defendants operate a motel business. The present operations of the defendants have been carried on in compliance with and under the authority of a specific tariff filed with and approved by the Nebraska Public Service Commission, as well as by the Federal Communications Commission. For the Nebraska Public Service Commission to enjoin that operation now because the defendants

do not have a certificate of public convenience and necessity, which they have never had, and which they cannot obtain in the present state of the facts and the law, is arbitrary and discriminatory. As the Federal Communications Commission observed in its Telerent opinion and order: "We do not believe that hotels or motels should be treated any differently from other, businesses so far as the ownership, operation and interconnection of their own equipment or systems are concerned."

The Nebraska Public Service Commission had no jurisdiction to enter its order of April 15, 1974, ordering the defendants to cease and desist from offering or providing the telephone service involved here without a certificate of public convenience and necessity, and its order was arbitrary and discriminatory. The action of the commission is reversed and the cause dismissed.

REVERSED AND DISMISSED.

NEWTON, J., dissenting.

I find I cannot agree with the opinion of McCown, J. Title 47 U. S. C. A., section 152 (b), provides: "Subject to the provisions of section 301 of this title, nothing in this chapter shall be construed to apply or to give the Commission jurisdiction with respect to (1) charges, classifications, practices, services, facilities, or regulations for or in connection with intrastate communication service by wire or radio of any carrier, * * *."

Title 47 U. S. C. A., section 221 (b), provides: "Subject to the provisions of section 301 of this title, nothing in this chapter shall be construed to apply, or to give the Commission jurisdiction, with respect to charges, classifications, practices, services, facilities, or regulations for or in connection with wire, mobile, or point-to-point radio telephone exchange service, or any combination thereof, even though a portion of such exchange service constitutes interstate or foreign communication, in any case where such matters are subject to regulation by a State commission or by local governmental authority."

In General Telephone Co. of Southwest v. United

States, 449 F. 2d 846, at 855, it is stated: "We agree with the reasoning of our sister circuit which was, inter alia, that '(t)he exclusion embodied in Section 2 (b) (2) was meant to protect State jurisdiction over local telephone facilities which could place interstate calls through their connection with major toll lines; this interstate facet of the company's operation was incidental to its primary local service,' 413 F. 2d at 402." (General Telephone Co. of Cal. v. F. C. C., 413 F. 2d 390.)

We are dealing here with the right of the Nebraska Public Service Commission to control the interconnection of customer-owned or provided equipment to the communication equipment of a telephone company. The situation is similar to that presented by local telephone facilities, such as rural lines, which can place interstate calls through their connection with major toll lines. Federal Communications Commission control in such instances is clearly barred by the federal statutes. Under modern conditions any subscriber to such a rural line can dial direct on long distance whether it be intrastate or interstate. Nevertheless, the Nebraska Public Service Commission has control of such lines to the exclusion of the Federal Communications Commission. Wherein does this type of service differ from that offered by a motel supplying telephone service to guests in its rooms? The guests have both local and interstate service available on a basis similar to that of a rural subscriber. In neither case is there any harm done to any interstate communication system and in the absence of any such detrimental effect there is no necessity or reason for Federal Communications Commission interference.

The opinion of McCown, J., is based primarily on In re Telerent Leasing Corp., FCC 74-109, Docket No. 19808. This case has been appealed and it would appear that there exists a serious likelihood that the Federal Communications Commission will be held to have overstepped its authority.