ATS Mobile Telephone, Inc., appellee, v. General
Communications Company, Inc., Omaha, Nebraska,
appellant, Impleaded with Northwestern Bell
Telephone Company, appellee.

282 N. W. 2d 16

Filed July 24, 1979.  No. 42102.

Frank Meares, for appellant.

Erickson, Sederstrom, Leigh, Johnson, Koukol &
Fortune, P.C., for appellee ATS.

Heard before Krivosha, C. J., McCown, Clinton,
and Brodkey, JJ., and Irons, District Judge.

Krivosha, C. J.

This is an appeal by the appellant, General Com-
munications Company, Inc., Omaha, Nebraska,
(GCC), from an order of the Nebraska Public Serv-
ice Commission (PSC), entered January 16, 1978, di-
recting GCC to cease and desist from operation as a
radio common carrier in Nebraska intrastate com-
merce until such time as GCC had satisfied and ful-
filled the requirements of section 75-604, R. R. S.
1943, including the obtaining of a certificate of public
convenience and necessity.  Among its several as-
signments of error, GCC alleges:  (1)  That the reg-
ulation and control of the activity conducted by GCC

is solely within the authority of the Federal Communications Commission (FCC) which has preempted the field, thereby precluding any action by the PSC; and (2) that the activity conducted by GCC was not "telephone service" within the meaning of section 75-604, R. R. S. 1943. For reasons more specifically given hereafter, we determine that the FCC has preempted the field and that the PSC is without jurisdiction to assert any authority over GCC in the instant matter. Accordingly, the PSC being without authority, its act of ordering GCC to cease and desist from exercising its rights under a license granted by the FCC must be and is reversed.

A brief description of the activity conducted by GCC is necessary to understand the problem involved herein. On September 21, 1977, GCC received from the FCC a license for Station KWW288. That license was issued as a "business radio service" license for frequency 152.48 and permitted the operation of a transmitter at 30th and Grover Streets in Omaha, Nebraska. The license was issued pursuant to Part 91, Industrial Radio Services, of the Code of Federal Regulations. See 47 C. F. R., § 91.1 et seq. (1978).

The license permits the operation of a one-way paging device for the use and benefit of a license holder. The system operates through the use of a touch-tone dial telephone, a leased telephone line, a device described in the record as an "STC Coupler," a transmitter, an encoder, and a portable receiving device commonly referred to as a "beeper."

To operate the system, one dials a previously assigned seven-digit telephone number which activates a telephone located at the base station. The system is designed to be activated by the tones of a touch-tone dial, and therefore the conventional dial-up phone cannot be used. The telephone located at the base station is in essence a telephone answering service, and upon receipt of the seven tones sends an

impulse back to the caller advising that the phone has been answered and will now accept further instructions. The caller then has a limited period of time in which to transmit an additional two tones which constitute the security system and permit the call to then pass from the receiving telephone into the terminal. Once the two-tone security code has been transmitted to the terminal, the caller then has access to an encoder which will permit the caller to transmit an additional three tones through the encoder to the transmitter. The encoder serves the function of screening the three tones and directing the transmitter to the correct beeper. Each beeper has its own three tones assigned to it and no other beeper has the same three tones. Upon receipt of the three tones by the transmitter, a tone is transmitted by radio wave to the beeper. Thereafter, either a tone alone or a tone and a voice message is received by the beeper and the holder of the beeper then knows to either call his base number or respond to the message received over the beeper.

GCC constructed the antenna and transmitter at 30th and Grover Streets and then offered to share the facilities with other licensees for a fee of $6.50 a month. In order for another individual to share in the facilities the individual was required to likewise file with and obtain from the FCC an FCC business radio license. The record indicates that at the time of hearing before the PSC there were some 45 to 48 pagers in use on this system, all of which had obtained FCC licenses as a business licensee, pursuant to 47 C. F. R., § 91 (1978), all operating under a frequency of 152.48 and all authorized to use the transmitter at 30th and Grover Streets in Omaha, Nebraska.

In finding that it had jurisdiction over GCC, the PSC reviewed the history of paging devices in Nebraska. In particular, it pointed out that our decision in Radio-Fone, Inc. v A.T.S. Mobile Telephone,

Inc., 187 Neb. 637, 193 N. W. 2d 442, held that the PSC had authority over "mobile telephone service." As a result of our holding in Radio-Fone, Inc., *supra*, the PSC promulgated rules and regulations to reflect its authority over mobile telephone communication, including "paging service." See, Rules of Nebraska Public Service Commission, "Radio Common Carriers," Chapter VI, sections 1.(k) and 1.(l). The rules defined "paging service" of all types to be "Radio Common Carrier Service."

Further in its order of January 16, 1978, the PSC noted our decision in ATS Mobile Tel., Inc. v. Curtin Call Communications, Inc., 194 Neb. 404, 232 N. W. 2d 248, where again we held that the PSC had authority over mobile radio telephone communications as radio common carrier service. Our decision in that case was based, in part, upon our interpretation of Title 47 U. S. C. A., § 221 (b), which reads as follows: "Subject to the provisions of section 301 of this title, nothing in this Act shall be construed to apply, or to give the (FCC) jurisdiction, with respect to charges, classifications, practices, services, facilities, or regulations for or in connection with wire, mobile, or point-to-point *radio telephone exchange service*, or any combination thereof, even though a portion of such exchange service constitutes interstate or foreign communication, in any case where such matters are subject to regulation by a State commission or by local governmental authority." (Emphasis supplied.)

We then went on to say in the Curtin Call case: "The section specifically covers mobile radio telephone exchange service, *exactly* the type of service we are dealing with in this case." (Emphasis supplied.) The unfortunate fact of the matter is that we were wrong about that conclusion. The term "telephone exchange service" is a statutory term of art and means service within a discrete local exchange system. See, 47 USCA § 153 (r), p. 68. This precise

matter was considered and discussed by the United States Court of Appeals for the Fourth Circuit in the case of North Carolina Utilities Commission v. F.C.C., 552 F. 2d 1036 (4th Cir., 1977), in which the PSC filed a brief amicus curiae. The court in the North Carolina Utilities Commission case said: "As we pointed out in North Carolina I [North Carolina Utilities Commission v. F. C. C., 537 F. 2d 787, 4th Cir., 1976] the legislative history of section 221 (b) leaves no doubt that the purpose of section 221 (b) is to enable state commissions to regulate local exchange service in metropolitan areas, such as New York, Washington or Kansas City, which extend across state boundaries. * * * Section 221 (b) simply does not apply to the 'facilities' with which this appeal is concerned."

Likewise, section 221 (b) is not concerned with paging devices involved in this appeal or involved in the Curtin Call case. Nor are one-way paging devices, as licensed by the FCC, "mobile radio telephone service" over which the FCC has agreed to permit the states to exercise some jurisdiction. See, United Telephone Co. of Ohio, 26 F. C. C. 2d 417; ATS Mobile Telephone, Inc., 35 F. C. C. 2d 443. A "one-way" paging service of the type exercised herein by the FCC cannot be "a Radio Common Carrier." See 47 C. F. R., § 91.2 (1978). The issue of preemption in the instant matter is not answered by our previous decisions in either the Radio-Fone case or the Curtin Call case, and requires a full and independent review of the preemption question.

The problems created by federal preemption and the resolution of those problems have given courts some difficulty throughout the history of our country and its dual federal-state system. As pointed out in cases exemplified by Florida Avocado Growers v. Paul, 373 U. S. 132, 83 S. Ct. 1210, 10 L. Ed. 2d 248, not all acts of Congress constitute preemption thereby precluding state action in a similar field. Prior de-

cisions on preemption, however, are not precise guidelines for each case turns on the peculiarities and special features of the federal regulatory scheme in question. See City of Burbank v. Lockheed Air Terminal, Inc., 411 U. S. 624, 93 S. Ct. 1854, 36 L. Ed. 2d 547. When Congress has unmistakably entered a field and has enacted regulations to govern a field, state laws regulating that aspect of commerce must fall. This result is required whether Congress specifically directs such a result in the legislation or such a result is required by reason of the purpose of the act. See, Jones v. Rath Packing Co., 430 U. S. 519, 97 S. Ct. 1305, 51 L. Ed. 2d 604; City of Burbank v. Lockheed Air Terminal, Inc., *supra*; Rice v. Santa Fe Elevator Corp., 331 U. S. 218, 67 S. Ct. 1146, 91 L. Ed. 1447.

Congressional enactments that do not exclude all state legislation in the same field nevertheless override state laws with which they conflict. United States Constitution, Art. VI. The criterion for determining whether state and federal laws are so inconsistent that the state law must give way is firmly established by case law. See Jones v. Rath Packing Co., *supra*. No state law can hinder or obstruct the free use of a license granted under an act of Congress. Pennsylvania v. Wheeling & B. Bridge Co., 13 How. 518, 14 L. Ed. 249 (1851). Our inquiry here must therefore be whether Congress has specifically preempted the field through the Federal Communications Act of 1934 and subsequent regulations promulgated by the FCC under its authority, and whether there is an irreconcilable conflict, between federal law on the one hand and state law on the other, to the end that the federal purpose is thwarted. We believe the answer to both questions must be in the affirmative.

The PSC in its order of January 16, 1978, determined from the evidence that in fact the operation by GCC and its other licensees was not a shared

cooperative venture using radio waves. It found that GCC was engaged in business as a radio common carrier and therefore was subject to the jurisdiction of the PSC.

An examination of the federal regulations under which the licenses in this matter were issued by the FCC will not permit that conclusion. It must be kept in mind that the FCC issued to GCC and the others a "Business License" to operate at a frequency of 152.48 and under no other license or at any other frequency.

Business radio licenses are issued under Subpart L of Part 91 of the regulations of the FCC. 47 C. F. R., § 91.551 et seq. (1978). Subpart L is a section of Part 91 of the same regulations entitled "Industrial Radio Services," 47 C. F. R., § 91.1 et seq. (1978).

Section 91.2 of Part 91 prescribes general limitations on the use of an industrial radio license of which a business radio license is one type. That section provides, in part: "(a) The radio facilities authorized under this part *shall not* be used for any of the following purposes: (1) Rendition of a communications common carrier service * * *." (Emphasis supplied.) The first conflict between federal and state law becomes apparent. The FCC regulations prohibit the holder of a business radio license from being a common carrier while PSC regulations declare that such licensee must be a common carrier and obtain a certificate of public convenience and necessity.

Section 91.552 further provides in part as follows: "* * * (c) Pursuant to the provisions of § 91.8, frequencies authorized to stations in the Business Radio Service can be used *only* on a shared and cooperative basis * * *." 47 C. F. R., § 91.552 (1978). Again, we see the conflict. The PSC says that GCC's claim of operation as a shared and cooperative system is a sham and that GCC in fact "* * * has dedicated its service for common use by the public. * * * GCC

does not conform to the traditional characteristics normally attributable to a shared system." The PSC's solution to this problem is to require GCC to become a common carrier under PSC regulations. That would cause GCC and its other licensees to be in direct violation of the FCC regulations and their own licenses. Such a conflict cannot be permitted to exist. Furthermore, frequency 152.48 can *only* be used for industrial purposes and *only* for one-way paging. See 47 C. F. R., §§ 2.106 and 91.554 (1978).

If in fact GCC is in violation of its FCC license in that it is not operating a true shared service or is not collecting a proper tariff or for any other reason, it is for the FCC to make that determination. Applying to and receiving from the PSC a certificate of public convenience and necessity cannot solve those problems. There is clearly a direct conflict between the FCC rules and PSC rules. Under the applicable law, the PSC rules must give way.

There is still a further reason why federal preemption must apply. The paging devices are so inter-related to interstate commerce as to fall within the FCC exclusive jurisdiction absent its agreement to the contrary.

Section 91.1 of Title 47 of the C. F. R. reads as follows: "The basis for the rules following in this part is the Communications Act of 1934, as amended, and applicable treaties and agreements to which the United States is a party. The rules in this part are issued pursuant to the authority contained in Title III of the Communications Act of 1934, as amended, which vests authority in the Federal Communications Commission to regulate radio transmissions and to issue licenses for radio stations." It could not be made clearer that the rules promulgated in 47 C. F. R., § 91.1 et seq. (1978), were clearly within the authority and jurisdiction of the FCC pursuant to the Communications Act of 1934, and intended to be exercised by the FCC except as otherwise delegated

to the states. In this particular case, we find no such delegation in the rules as is the case in certain aspects of Domestic Public Land Mobile Radio Service, 47 C. F. R., § 21.500 (1978).

In Sherdon v. Dann, 193 Neb. 768, 229 N. W. 2d 531, we reviewed and discussed the issue of federal preemption and the relationship between the FCC and the PSC. Therein we said: " 'At the outset we point out it is well-settled law that all federal regulations done in pursuance of one of Congress' delegated powers are capable of preempting any state legislation or regulation on the same subject.' " We there further said: "It should be noted further that under Title 3 of the Federal Communications Act, the Federal Communications Commission is given *exclusive* jurisdiction under the act to license radio facilities. In Nebraska, as in every other state, the telephone companies and many of their interconnecting customers are users of radio facilities, and as to all such facilities are subject *solely* to the regulatory jurisdiction of the Federal Communications Commission." (Emphasis supplied.)

In a dissenting opinion in the Sherdon case, it was noted that the majority opinion was based primarily on the case of Telerent Leasing Corp., 45 F. C. C. 2d 204, which was then on appeal to the United States Court of Appeals for the Fourth Circuit. Since that time, the decision in Telerent Leasing Corp., *supra*, has twice been reviewed by the United States Court of Appeals for the Fourth Circuit, and on each occasion the preemption by the FCC has been sustained. See, North Carolina Utilities Commission v. F. C. C. (North Carolina I), *supra*; North Carolina Utilities Commission v. F. C. C. (North Carolina II), *supra*.

It is appropriate that the FCC have jurisdiction over the pagers in order to develop uniform regulations. It is suggested that pagers are purely local in use. Such suggestion fails to recognize the move-

ment of radio waves. A Nebraska licensee living in Omaha can be contacted by this system while in Council Bluffs. Similarly, one in South Sioux City can be contacted in Sioux City, Iowa. The same is true for a significant distance along Nebraska's entire border with that of any other state. The radio waves moving from a transmitter in one state to a beeper located in another certainly are involved in commerce between the states. Unless uniformly regulated, such radio communications could create much disruption between the states, particularly where one state permitted the transmission but the adjoining state prohibited its reception. Not only does the FCC have authority to regulate paging devices, in fact they have regulated them and issued licenses for their use. That should be sufficient to constitute preempting and preclude the PSC from interfering.

Here the licensee has been granted authority to act in a particular way by the FCC and is precluded from so doing by the PSC. Moreover, the action of the PSC has likewise denied all other licensees sharing the use of the transmitter the right to use their FCC license even though they were not made parties to the PSC proceedings. The irreconcilable conflict is apparent and should be prevented.

To the extent that our previous holdings in the Radio-Fone case and the Curtin Call case are inconsistent with our decision herein, they are overruled. Particularly they are overruled to the extent they granted to the PSC jurisdiction over one-way pagers authorized and licensed by the FCC under "Industrial Radio Service." Whether GCC and the other licensees can continue operation as they were doing at the time of the hearing or must change either because they are in fact in violation of thier licenses or because of new regulations adopted by the FCC and now in effect is not decided by this appeal. That is for the FCC to determine. We simply hold that the

PSC does not have authority over GCC and the other licensees of the shared systems insofar as they are operating one-way paging devices.

In view of our disposition of the matter, we need not consider any other assignments of error suggested by GCC.

The judgment of the PSC ordering GCC to permanently cease and desist from operation until such time as it has satisfied and fulfilled the requirements of section 75-604, R. R. S. 1943, and any other applicable statute or rule, is reversed and vacated and the cause remanded with directions to dismiss the complaint.

REVERSED AND REMANDED
WITH DIRECTIONS.