ATS MOBILE TELEPHONE, INC., OMAHA, NEBRASKA, APPELLEE, V. CURTIN CALL COMMUNICATIONS, INC., ET AL., APPELLANTS.
232 N. W. 2d 248

Filed July 31, 1975. No. 39855.

Einar Viren of Viren, Epstein & Leahy, for appellants.

Donald H. Erickson of Erickson, Sederstrom, Johnson & Fortune, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, MC-COWN, NEWTON, CLINTON, and BRODKEY, JJ.

WHITE, C. J.

This is an appeal by the defendants, Curtin Call Communications, Inc. (Curtin Call), and Ben and Mary Ciaccio, doing business as Telephone Secretaries of Omaha and Telephone Answering Service of Omaha, from a ruling by the Nebraska Public Service Commission sustaining a complaint filed by the complainant, ATS Mobile Telephone, Inc. (ATS). The Commission ordered Curtin Call to cease and desist from offering communication services to Nebraska customers without first receiving a certificate of public convenience and necessity from the Nebraska Public Service Commission. We affirm the judgment of the Nebraska Public Service Commission.

The facts in this case are undisputed. Both Curtin Call and ATS are involved in mobile radio telephone paging services. The paging device functions as follows: A caller who desires to communicate with one of the paging services' customers dials a seven-digit number on a normal land exchange telephone. This number connects the caller to the paging system. The system then connects the caller to the customer via a radio

signal which activates the paging device carried by the customer. The paging device, depending on the type, emits either a tone or a tone-and-voice message after being activated by the signal. The system can also be set up to provide two-way paging service; that is, the customer can communicate in return with the caller, and he can also dial into the land-exchange telephone system through the use of the paging device.

ATS holds a certificate of public convenience and necessity issued by the Nebraska Public Service Commission and a license from the Federal Communications Commission to operate a mobile radio telephone paging service in Omaha, Nebraska, and Council Bluffs, Iowa.

Curtin Call applied for a Nebraska certificate of public convenience and necessity to provide a similar paging service in Omaha, Nebraska, but the Nebraska Public Service Commission denied the request. In May 1972, the Federal Communications Commission granted a frequency channel to Curtin Call to operate a paging service in Council Bluffs, Iowa. In granting Curtin Call's application, the Federal Communications Commission noted that the application was to serve the Council Bluffs area, not the Omaha area. In its order, the Federal Communications Commission pointed out that the permit did not authorize Curtin Call to serve customers in Nebraska, and if Curtin Call desired to serve customers in Nebraska, it should first apply to the Nebraska State Railway Commission (predecessor to the Nebraska Public Service Commission).

Curtin Call, through its sales personnel, has secured customers from Omaha, Nebraska. The defendant admits that some of its customers are located in Nebraska. The president and one of the stockholders of Curtin Call, Ben Ciaccio, has an office in Omaha, from which he solicits orders for Curtin Call. Another stockholder, William Curtin, solicits orders for Curtin Call in Omaha, Nebraska, under the tradename of Radio Contact Communications.

On April 19, 1974, ATS filed a formal complaint with the Nebraska Public Service Commission charging that Curtin Call was offering mobile radio telephone paging service in Omaha, Nebraska, without a Nebraska certificate of public convenience and necessity. Four days later, on April 23, 1974, ATS filed a petition with the Federal Communications Commission requesting a cease and desist order to be issued against Curtin Call. That petition is still pending.

On September 3, 1974, the Nebraska Public Service Commission sustained ATS' complaint and ordered Curtin Call to cease and desist from offering paging service to customers in Nebraska without first receiving a certificate of public convenience and necessity. The defendants appeal from that order.

The sole issue to be decided on appeal is whether the Nebraska Public Service Commission has jurisdiction over both the subject matter of the complaint and the defendant.

Under the Supremacy Clause, Article VI, paragraph 2, of the Constitution of the United States, the federal constitution and laws are the supreme laws of the land. State regulation in an area legitimately regulated by the federal government can avoid being preempted if three tests are passed. First, did Congress intend to preempt the area? Second, do the state and federal laws irreconcilably conflict? Third, by the very nature of the subject regulated, is there a need for national uniformity? The answer must be "no" to all three questions if the state regulation is to be upheld.

This three-pronged test is set out in Florida Lime & Avocado Growers, Inc. v. Paul, 373 U. S. 132, 83 S. Ct. 1210, 10 L. Ed. 2d 248. In that case, as in the case at hand, state regulation of interstate commerce was challenged. The Commerce Clause, Article I, section 8, clause 3, of the Constitution of the United States, gives Congress the right to regulate interstate commerce. Thus, the Supremacy Clause, together with the Com-

merce Clause, acts to preempt state regulation in the area of interstate commerce if the three tests are not met. First, the United States Supreme Court determined that there was no actual conflict between the state and federal regulations. Next, the court applied the two remaining tests. "The issue under the head of the Supremacy Clause is narrowed then to this: Does either the nature of the subject matter, * * *, or any explicit declaration of congressional design to displace state regulation, requires § 792 (California statute) to yield to the federal marketing orders?" See 373 U. S. at p. 143.

In Head v. New Mexico Board of Examiners in Optometry, 374 U. S. 424, 83 S. Ct. 1759, 10 L. Ed. 2d 983, the United States Supreme Court again indicated that state regulation in the area of interstate commerce must pass the three tests. The court said: "In areas of the law not inherently requiring national uniformity, our decisions are clear in requiring that state statutes, otherwise valid, must be upheld unless there is found 'such actual conflict between the two schemes that both cannot stand in the same area, [or] evidence of a congressional design to preempt the field.'"

The first and major question then to ask in this case is: Did Congress, in enacting the Communications Act of 1934, Title 47 U. S. C. A., sections 151 to 609, intend to occupy the area of mobile radio telephone communications to the exclusion of the states? The answer is clearly "no." One section of the Communications Act of 1934 is precisely on point. Title 47 U. S. C. A., section 221 (b), reads: "Subject to the provisions of section 301 of this title, nothing in this Act shall be construed to apply, or to give the Commission jurisdiction, with respect to charges, classifications, practices, services, facilities, or regulations for or in connection with wire, mobile, or point-to-point radio telephone exchange service, or any combination thereof, even though a portion of such exchange service constitutes interstate or foreign

communication, in any case where such matters are subject to regulation by a State commission or by local governmental authority."

The section specifically covers mobile radio telephone exchange service, exactly the type of service we are dealing with in this case.

The proper standard to be used in determining if Congress intended to preempt an area was given by the United States Supreme Court in Florida Lime & Avocado Growers v. Paul, *supra*. The court said: "The settled mandate governing this inquiry, in deference to the fact that a state regulation of this kind is an exercise of the 'historic police powers of the States,' is not to decree such a federal displacement 'unless that was the clear and manifest purpose of Congress.'"

There is certainly no "clear and manifest purpose of Congress" to preempt the states in section 221 (b). To the contrary, there is a clear and manifest purpose of Congress in section 221 (b) to permit the states to regulate activities such as mobile radio telephone paging services.

In Radio Telephone Communications, Inc. v. Southeastern Telephone Co. (Fla.), 170 So. 2d 577, the Florida Supreme Court was presented with the same question as faces this court, that is, whether the state could regulate mobile radio telephone services which involved interstate communication. The court held that Congress did not preempt the area, saying: "These communications services are essentially intra-state in nature, *even though the radio portion of such services might 'spill over' into an adjoining state,* since a radio signal cannot recognize nor stop at a state line; and it is clear that Congress intended *to reserve to the several states* the right to regulate such intrastate services in the manner specified in Section 221 (b)." (Emphasis supplied.)

In addition, the Federal Communications Commission has interpreted section 221 (b) so that the Federal Communications Commission does not preempt state regu-

lation in the area of mobile radio telephone services. There is a general rule of statutory construction that the interpretation of a statute given by an administrative agency to which the statute is directed is entitled to great weight. See Udall v. Tallman, 380 U. S. 1, 85 S. Ct. 792, 13 L. Ed. 2d 616. When applying to the Federal Communications Commission for a license to operate a mobile radio telephone service, the following Commission requirements must be met. "Where required by applicable local law, a certified copy of the franchise or other authorization issued by appropriate regulatory authorities. If no such local requirement exists, a statement to that effect should be included in the application." 47 C. F. R., § 21.15 (c)(4).

The Federal Communications Commission applied 47 C. F. R., section .21.15 (c)(4) and section 221 (b) of the Communications Act of 1934 in a case dealing with mobile radio telephone services in In re Application of Souris River Telephone Mutual Aid Corporation, 28 F. C. C. 275. The Commission held that the state had the primary jurisdiction in regulating mobile radio telephone service.

Also, in its granting of a permit to the defendant Curtin Call, the Federal Communications Commission stated that: "It should be made clear however that neither the construction permit, nor the one for the one-way service authorized Curtin Call to serve customers located in the State of Nebraska, unless and until it should receive appropriate authority from that state."

Thus it is clear that the Communications Act of 1934 did not preempt the states in the regulation of mobile radio telephone service, since neither the language of the act indicates an intent to preempt nor does the interpretation of the statute by the Federal Communications Commission indicate such an intent to preempt.

After concluding that Congress has not intended to preempt the area, we must now determine if there is a

need for national uniformity in the area of mobile radio telephone services. The answer is clearly "no."

The service provided in this case is local in nature. There are some incidents of interstate communications but there is a limit to the area in which such services can be provided. Generally a company furnishing mobile radio telephone services provides the services in a relatively small area. There is no need for national uniformity here. The type of service given customers of mobile radio telephone paging services in Omaha, Nebraska, has no effect on customers of such paging services in New York or California. Differences in the system nationwide are irrelevant. The services are entirely local in nature.

In Jordaphone Corp. of America v. American Telephone & Telegraph Co., 18 F. C. C. 644, the Federal communications Commission recognized that communication systems can involve some interstate communication and still retain their local nature. In Jordaphone, one issue was whether automatic telephone answering devices could be regulated by the Federal Communications Commission or by the state regulatory agencies. The Federal Communications Commission said that there was joint jurisdiction. Local regulatory agencies were not preempted because the automatic telephone answering service was primarily local in nature, even though it would incidentally be used to answer interstate calls.

A recent federal case, TV Pix Inc. v. Taylor, 304 F. Supp. 459, decided by a three-judge District Court, and affirmed by the Supreme Court, 396 U. S. 556, permitted the state to regulate cable television services, although interstate communication was obviously involved. The court said that the service was an integral part of interstate commerce but that its incidents were more local than national. "Appropriate state regulation of such primarily local facilities or services in interest (interstate) commerce, in the absence of federal legislative

intervention, is not proscribed by the Commerce Clause of the Constitution."

Thus it is clear that the mobile radio telephone paging service is local in nature and there is no need for national uniformity.

Lastly, we must determine if there is an actual conflict between the state and federal regulations. The answer is again unquestionably "no." The test in this area is not whether there is any *possible* conflict between the state and federal regulations, but rather is there *necessarily* any conflict between the two sets of regulations. In Florida Lime & Avocado Growers v. Paul, *supra,* the United States Supreme Court said that a federal license does not immunize the licensed commerce for more demanding state regulations. The court said: "A holding of federal exclusion of state law is inescapable * * * where compliance with both federal and state regulations is a physical impossibility for one engaged in interstate commerce." But the court noted in that case, "there is neither such actual conflict between the two schemes of regulation that both cannot stand in the same area, * * * the present record demonstrates no inevitable collision between the two schemes of regulations."

In the case at hand, there is no actual conflict between the state regulations and the federal regulations. A federal license issued by the Federal Communications Commission neither guarantees an applicant receiving a license from the Nebraska Public Service Commission nor guarantees an applicant being denied a license by the Nebraska Public Service Commission. Thus, there is no actual conflict between the two sets of regulations.

We have found that first, Congress did not intend to preempt state regulation of mobile radio telephone paging services; second, mobile radio telephone paging services are primarily local; and third, there is no actual conflict between the state and the federal regulations.

Therefore, the State of Nebraska is not preempted from regulating mobile radio telephone paging services, and the Nebraska Public Service Commission had the jurisdiction to order the defendant, Curtin Call, to cease and desist from offering services in Nebraska.

The decision of the Nebraska Public Service Commission is correct and is affirmed.

AFFIRMED.

BOSLAUGH, J., concurs in the result.