626 P.2d 564 (1981)
In the Matter of the Appeal of David R. WILLIAMS d/b/a Industrial Communications From a Decision of the Wyoming Public Service Commission In Docket No. 9661, Sub 1 Dated May 18, 1979, As Altered By Its Decision Dated August 29, 1979.
David R. WILLIAMS, d/b/a Industrial Communications, Appellant (Petitioner),
v.
PUBLIC SERVICE COMMISSION OF WYOMING and Commercial Communications, Inc., Appellees (Respondents).
No. 5410.
Supreme Court of Wyoming.
April 10, 1981.
Rehearing Denied May 12, 1981.
Michael A. Neider, Salt Lake City, Utah (argued) specially admitted for purposes of this case, and Walter P. Faber, Jr., Salt Lake City, Utah, and Ward White of Guy, Williams & White, Cheyenne, for appellant.
John D. Troughton, Atty. Gen., Thomas J. Carroll, III, Senior Asst. Atty. Gen., Steven R. Shanahan, Lawrence J. Wolfe, Asst. Attys. Gen., Cheyenne, (argued) for appellee Public Service Commission.
*565 David H. Carmichael (argued) of Carmichael, McNiff & Patton, Cheyenne, for appellee Commercial Communications, Inc.
Before ROSE, C.J., and McCLINTOCK[*], RAPER, THOMAS and ROONEY, JJ.
RAPER, Justice.
From an order of the district court affirming an order of the Public Service Commission (PSC), David R. Williams, d/b/a Industrial Communications (appellant) feels aggrieved and appeals. Several issues are presented. Their focus is upon the PSC's authority to regulate radio common carriers.[1] Appellant states the questions raised as follows:
"1. Whether the Commission exceeded its authority in attempting to allocate common carrier two-way radio telephone channels when the allocation and granting of such channels is in the exclusive jurisdiction of the Federal Communications Commission (FCC).
"2. Whether the Commission exceeded its authority by requiring the parties to obtain or relinquish radio channels and otherwise comply within a certain period of time because the parties have no control over the FCC which has exclusive jurisdiction of such matters.
"3. Whether the Commission exceeded its authority in attempting to limit Industrial Communication's radio service area when the grant of any common carrier radio service area is in the exclusive jurisdiction of the FCC.
"4. Whether the Commission without a basis in fact or law arbitrarily and capriciously reduced Industrial Communication's service area granted in 1977."
Appellee, Commercial Communications, Inc. (Commercial), views the case more simply as asking:
"A. Whether the regulatory action taken by the Wyoming Public Service Commission, in the instant case, is prohibited because of the doctrine of `federal preemption'?
"B. Whether the Wyoming Public Service Commission exceeded its statutory authority in modifying previously issued Certificates of Convenience and Necessity, in the instant case, by attaching certain conditions to those Certificates and, if so, may the Petitioner, David R. Williams d/b/a Industrial Communications, successfully assert reversible error at this point in the proceedings?"
We will affirm the district court.
In January of 1977 Commercial filed its application with the PSC for authority to commence radio telephone service to the cities of Rawlins and Evanston in southwestern Wyoming. This was done pursuant to § 37-2-205(a), W.S. 1977, which provides:
"(a) No public utility shall begin construction of a line, plant or system, or of any extension of a line, plant or system without having first obtained from the commission a certificate that the present or future public convenience and necessity require or will require such construction. This act shall not be construed to require any public utility to secure a certificate for an extension within any city or town within which it has lawfully commenced operation, or for an extension into territory contiguous to its line, plant or system for which no certificate is in force and is not served by a public utility of like character or for any extension within or to territory already served by it, necessary in the ordinary course of its business. If any public utility, in constructing or extending its line, plant or system interferes or is about to interfere with the operation of the line, plant or system of any other public utility already authorized or constructed, the commission on complaint of the public utility claiming to be injuriously affected, may after hearing make such order and prescribe the terms and conditions for the location *566 of the lines, plants or systems affected, as to it are just and reasonable. The power companies may, without the certificate, increase capacity of existing plants."[2]
Various parties, including appellant, filed protests and sought to intervene in the proceedings conducted by the PSC upon such an application.
Appellant filed its own application for a certificate of convenience and necessity in February of 1977. In it, authority was sought to provide radio telephone service to all or parts of the southwestern Wyoming Counties of Lincoln, Uinta, and Sweetwater. Protests were filed by various parties including Commercial, and leave to intervene was requested.
On August 22, 1977, appellant petitioned for leave to amend its application in order to include Sublette and Carbon Counties. As later found by the PSC:
"* * * The Commission denied the petition in an order dated August 25, 1977, but in response to a motion made by Industrial in the pre-hearing conference held August 29, 1977, the Commission allowed Industrial to present evidence pertaining to Sublette and Carbon County."
All matters were consolidated for hearing by the PSC. On August 29, 1977, a pre-hearing conference began. During this conference settlement negotiations were carried out by the parties. As a result a stipulation was agreed to. This agreement was dated September 1, 1977, and was incorporated by reference into the order issued by the PSC on November 29, 1977, which provided in pertinent part:
"2) Each of the above applicants agrees and stipulates that each shall and does hereby withdraw as a protestant and/or intervenor, as the case may be, in and to the application and requested amendments of each of the others in the respective Docket No. and case, and further agrees and stipulates that each could have and is hereby considered as having furnished sufficient evidence to justify and warrant the complete granting of the respective application and requested amendments thereto by the Wyoming Public Service Commission, except as specifically limited herein.
* * * * * *
"9) Each of the above applicants agrees and stipulates that the application and requested amendments of each as stated above should be granted under the following terms and conditions:
* * * * * *
"(d) Commercial Communications, Inc. and David R. Williams will jointly apply to the FCC for a construction permit and license for VHF channel 7 (frequency 152.120 MHz) for Carbon County, Wyo., and shall share equally in the cost of obtaining and installing said channel, operating said channel and the use of said channel. Neither Commercial nor Williams shall use said channel during any period so as to prevent the use by the other of one-half of the channel time during such period. None of the other applicants shall protest Commercial's and Williams' application to the FCC for said channel.
"(e) Commercial and Williams shall within three weeks from the date hereof arrange to meet in Evanston, Wyoming to study and determine if any interference will occur to either because of the use of VHF channels 1 and 9 in that area. If it is determined that undue interference will occur, Commercial and Williams agree to work out a solution and agree that any such interference will be deemed to be caused equally by the operations of both and *567 shall be equally the responsibility of both. This shall not be construed to require a change in effective radiated power or antenna direction of any presently existing transmitters.
"(f) Each applicant shall receive authority as requested in each individual application and requested amendments thereto except as limited in this stipulation."
On August 2, 1978, Commercial filed a complaint and petitioned for cancellation of appellant's certification of public convenience and necessity. It alleged that appellant was blocking and obstructing Commercial's efforts to commence service in Rawlins and Evanston and that Commercial had signed the September 1, 1977 stipulation because of the coercion, threats, and business duress instigated by appellant. In the alternative it asked that the PSC declare that Sublette and Sweetwater Counties were not included in appellant's certificate as service areas. Appellant filed an answer and counterpetition on August 29, 1978. In it the claim was made that it was Commercial, not appellant, that had refused to cooperate in bringing radio telephone service to southwestern Wyoming.
On December 1, 1978, the PSC entered an order setting the matter for hearing and listed the following issues as those to be resolved:
"a) Whether Industrial has in any manner violated the Commission's Order of November 29, 1977;
"b) Whether there was fraudulent inducement upon any party to sign the Stipulation of September 1, 1977; should such be found to exist, what impact, if any, does this have upon the Stipulation and the parties who relied thereon;
"c) What is the scope of the Stipulation with regard to the operating authority provided therein; and
"d) To what extent, if any, has the public been harmed by the inability of the parties to comply with the Commission's Order of November 29, 1977 and what action, if any, is required in the public interest to alleviate such harm as may be found to exist."
The PSC then directed:
"c) Both parties shall be under the same burden of producing sufficient evidence to show why their respective certificates of November 29, 1977 should not be revoked, altered or amended in any manner as may be required in the public interest."
Finally, the order noted:
"5. The Commission shall not issue an Order to Show Cause to either petitioner in this proceeding as to why their respective certificates should not be revoked or amended in any manner, but shall instead proceed upon a formal complaint basis. However due to the nature of each party's petition in this matter, each party shall consider their respective certificate grants to be in question and shall direct their evidence to include consideration of this point."
Hearings on the matter commenced January 23, 1979. On May 18, 1979, the PSC released its opinion and order. It provided in part:
"14. Resolution of the present controversy between Industrial and Commercial cannot be obtained without first examining and clarifying the certificated service area of each party. To the extent this clarification may amend and redefine either party's present service area, neither may thereafter complain for they were specifically informed of this possibility in the Commission's Notice and Order Setting Hearing referenced hereinabove at paragraph eight (8).
"The certificated service areas of Commercial, as noted previously, would consist of: (1) that area encompassed by a 37 dbu contour eminating [sic] from Aspen Mountain; (2) that area encompassed by a 37 dbu contour eminating [sic] from Hogsback Ridge; (3) a primary (90%) and secondary (75%) service area, non-exclusive, radiating from Medicine Butte five (5) miles northeast of Evanston; and (4) a primary (90%) and secondary (75%) service area, non-exclusive radiating from *568 Nine-Mile Hill, nine (9) miles north of Rawlins.
"The certificated service areas of Industrial would consist of: (1) a primary (90%) and secondary (75%) service area, non-exclusive, radiating from Marsh Peak, Utah; (2) a primary (90%) and secondary (75%) service area, non-exclusive, radiating from Medicine Butte, Wyoming; and (3) a primary (90%) and secondary (75%) service area, non-exclusive, radiating from Nine-Mile Hill.
"15. There has been a great deal of confusion concerning the areas certificated to Industrial for RCC service, primarily due to various ambiguities and errors in Commission's Order of November 29, 1977. Industrial first petitioned for authority to serve all or portions of Uinta; [,] Lincoln and Sweetwater Counties, Wyoming. It later requested, and was denied, leave to amend its application to include the Counties of Sublette and Carbon. Industrial renewed its amendment request at the pre-hearing conference of August 29, 1977 and was allowed to include Carbon County, but Sublette was again refused due to lack of public notice. The Order of November 29, 1977 incorrectly states, in paragraph four (4) of the Findings of Fact at page five (5), that the Commission allowed Industrial to present evidence concerning Sublette County. To the extent this Finding of Fact at paragraph four (4) of the Order of November 29, 1977 is inconsistent with the testimony and evidence of record, it is hereby corrected by deleting Sublette County from the last sentence thereof.
"The confusion surrounding the service area of Industrial continues to exist however due to the various references throughout the Stipulation of September 1, 1977 to the `application and requested amendments of each party.' Although it may be argued this language has the effect of including Sublette County, this argument is devoid of any merit or substance as the parties cannot by stipulation usurp the jurisdiction specifically vested in this Commission by statute. * * *
"16. Each party to this proceeding has essentially asked the Commission to resolve the differences between them either by certificate cancellation or further directive. Each party has alleged the other is responsible for failing to comply with the terms and conditions of the Stipulation and that such other party is solely responsible for the failure to provide service to the public as ordered on November 29, 1977. Each has alleged numerous facts and produced certain testimony and exhibits to substantiate their respective positions. The only certain fact is that both parties have not complied with the order directing service be implemented to and for the public. * * *
* * * * * *
"Upon full and careful examination of the testimony and evidence produced in this proceeding concerning the various actions by each party herein, the Commission finds there is insufficient evidence to support a finding that the Stipulation of September 1, 1977 was a direct result of undue duress and influence upon Commercial Communications. Accordingly, the document shall remain in full force and effect as between the parties of interest herein and the other signatories to said document. Commercial was represented at all stages of the proceeding by legal counsel and was under no obligation to execute the document in question.
* * * * * *
"The Commission has reviewed the record at great length and must conclude the public has indeed been harmed by the inability of the parties to comply with the Stipulation, but finds that it cannot attribute fault to either party individually; both parties must bear a portion of this responsibility. Each party has made some effort to comply with the terms of the Stipulation, but neither has approached the matter in good faith due to the possible adverse business consequences that may result from the prospective relinquishment of VHF channels. *569 The primary concern of the Commission in this case is not the competitive interests of the parties, but the public interest which is to be served by their respective utility operations. Each party is fully aware there are but a few VHF channels presently authorized by the Federal Communications Commission and that all such channels are presently in use in southwestern Wyoming. Accordingly, each party is aware that pursuit of his own best interest requires the authorization of as many VHF channels as possible which are free from co-channel interference with another utility. Both parties to this proceeding are aware of the channel problem and both are reluctant to accommodate the other's operations. Industrial presently utilizes five of the seven available channels and has petitioned the FCC for authority to utilize the remaining two. Commercial presently operates on only two channels, and is unwilling to execute any document whereby those would be the only channels it may use prospectively in the State of Wyoming. It is apparent, neither party is concerned with the public interest; both are seeking to further their own business interest. The Commission recognizes its responsibility in this matter and sees that resolution may only be obtained by a determination as to which utility shall be entitled to use certain channels in specific locations in southwestern Wyoming. Based upon the testimony and evidence of record and the previous attempts of the parties to comply with the terms of the Stipulation, the Commission finds that Commercial should be entitled to operate on VHF Channels 1 and 9 in the Rock Springs, Green River, Evanston and LaBarge areas, and that Industrial should continue operations on its existing Channels 3, 5, 7, 11 and 13.
"17. The Commission recognizes the fact it does not have jurisdiction over the allocation of radio frequencies, but it does have jurisdiction over what is required in the public interest. The aforementioned Channel allocations are the result of the Commission's determination as to what Channels would be acceptable to this Commission in furtherance of the public interest each utility is required to serve.
"18. The controversy herein centers around two Wyoming cities, to-wit: Evanston and Rawlins, Wyoming. The application of Commercial specifically sought to serve these cities while the application of Industrial would seem to include such by implication. The aforementioned channel allocation shall resolve the dispute in and around the Evanston area, leaving only the Rawlins area in dispute. Each party stipulated in 1977 they would share VHF Channel 7 and that such a joint application would be made to the FCC. The parties subsequently met in accordance with the terms of the Stipulation, but due to various problems alleged by each party, neither was able to comply with the terms of the Stipulation. Industrial determined service could be rendered from existing Marsh Peak facilities, and Commercial determined that an independent application would be required due to the inability of the parties to comply with the terms of the Stipulation.
"The Commission finds there is no testimony in evidence of record to support a finding it is impractical or impossible for either party to complete the terms of the Stipulation as such concerns the Rawlins service area. Accordingly, the Commission finds the Stipulation shall continue to be in full force and effect and that both parties shall hereafter be required to jointly apply to the FCC for shared authority on VHF Channel 7.
"19. The final issue as framed by the Notice and Order Setting Hearing which requires resolution herein, is whether or not either party should have their operating certificate revoked. As noted previously, it is difficult if not impossible for this Commission to attribute fault to any one party based upon the confusing and often contradictory testimony and evidence of record. As noted hereinabove, the Commission has found the Stipulation to be in full force and effect and that *570 each party is still bound by the terms and conditions contained therein. The Stipulation also provides that such will continue until otherwise ordered by this Commission. Accordingly, both parties shall be ordered to obtain the FCC authority recommended herein within six months of the date of this order, and to thereafter provide service within nine months of FCC channel authorization. Should either party fail to so act, either individually or jointly, the Commission shall immediately take steps necessary to revoke their respective certificate authorities granted in the Evanston and Rawlins service areas."
Both appellant and Commercial filed for rehearing and clarification. On August 29, 1979, the PSC denied their petitions. Appellant then sought review of the PSC order in the district court. Following the submission of briefs by appellant, Commercial and the PSC, on September 17, 1980, the district court judge affirmed the PSC's order.
Appellant's first challenge to the PSC's order claims that the "Commission exceeded its authority in attempting to allocate common carrier two-way radio telephone channels when the allocation and granting of such channels is in the exclusive jurisdiction of the Federal Communications Commission (FCC)." Appellant's second challenge attacks PSC's establishment of time limits. However, as to these issues, appellant during the PSC's hearings advocated that the PSC both allocate channels and create time restrictions for compliance. Appellant's counsel stated during his closing remarks to the Commission on March 7, 1979, that:
"It seems to us that is the better way to handle it, and we believe this Commission has the power and authority to do it is to have these parties deal on muchly [sic] exclusive channels and that this Commission order compliance with that kind of an arrangement within a certain period of time.
"In that period of time and within that period of time they do not do it, it then should be a question about revoking a certificate, because as long as these matters are tied up in the Federal Communications Commission, we are not going to have service that is needed in the southwest portion of Wyoming.
"Now, what we would like to see is to come to some kind of a directive from this Commission telling the parties, `Look, you are going to have to do it this way so that our people can get the service that you tell us is needed.'
* * * * * *
"I would suggest to the Commission that the Commission has the power, and I think if we are going to resolve this matter within the foreseeable future, this Commission should act on it, and we, of course, will supply the Commission with the authority and statistics and data that we believe it can act upon.
"Thank you."
In appellant's brief filed with the Commission on April 27, 1977, it was argued that:
"Each of the parties is presently operating on five mobile radio channels in southwestern Wyoming. The fastest and least expensive way to insure full interference free service to the public is to prevent the continuing dispute about interference in situations where two persons have authority over the same channels in wide area coverage situations. Thus, although enforcing the Commission's order based on the stipulation would be one solution to the present impasse, the better approach appears to be to require the parties to operate on different channels to avoid all interference problems and require the parties to take such action immediately under the risk of losing Commission authority to operate.

"It is the position of Industrial that the Wyoming Public Service Commission has the power to regulate RCC's [radio common carriers] operating in the State of Wyoming so long as such regulation does not violate the applicable FCC rules in regard to the procedural granting of channel licenses and the physical operation thereof. * * *
* * * * * *

*571 "The exercise of the above described authority in this case would not infringe on the authority of the FCC. * * *
* * * * * *
"As was proposed above, it appears that the best way to obtain radio common carrier service for the public in southwestern Wyoming on an interference free basis, is for this Commission to take action within its powers and require the parties to provide service forthwith. * * * The Commission could enforce its order by revoking the certificate of any party who failed to comply with the Commission's order within a fixed period. The order would necessarily include the requirement that the parties settle their disputes before the FCC and require that Industrial withdraw its application for channels 1 and 9 in Evanston. The Commission might also consider the limitation of further applications by the parties to the FCC for additional UHF channels except on some equitable basis which would insure interference free service to the public. Commercial's own expert believes the Commission has the power to invoke the above solution." (Emphasis added.)
Thus it is clear that appellant asked the PSC to do as it did. Now on appeal appellant challenges that action.
Appellant also alleges that the PSC exceeded its authority by prescribing his radio service area. However, this issue was never raised before the PSC. In fact in appellant's Application for Rehearing and Clarification of Order, he argued that the Commission had failed to establish primary and secondary service areas:
"2. The Commission's Memorandum Opinion and Order failed to provide Industrial primary and secondary service areas radiating from Aspen Mountain and Hogsback Ridge for service in Lincoln and Sweetwater Counties, Wyoming which authority Industrial was granted by the Commission's order of November, 1977. * * *"
As a general rule, parties as bound by the theories they advanced below. Laramie Printing Trustees v. Krueger, Wyo. 1968, 437 P.2d 856, 859. Further, under the doctrine of invited error, if a party induces action by a court or an agency, he will not be heard on appeal to argue error based upon that action. Weber v. Johnston Fuel Liners, Inc., Wyo. 1974, 519 P.2d 972, 978. However, there is an exception to that rule. As noted in Matter of Various Water Rights in Lake DeSmet Reservoir, Wyo. 1981, 623 P.2d 764, 767, a challenge to a court's or a quasi-judicial body's jurisdiction over the subject matter can never be waived. "[I]t is open for consideration by the reviewing court whenever it is raised by any party, or it may be raised by the court of its own motion." Gardner v. Walker, Wyo. 1962, 373 P.2d 598, 599.
In this case appellant's challenges in essence question the jurisdiction of the PSC to grant conditional certificates of convenience and necessity. This is done on two levels. First, it is contended that there is no statutory authorization for the PSC's action. Second, appellant argues that the PSC's conduct infringes upon the exclusive jurisdiction of the Federal Communications Commission (FCC) and thus violates the concept of federal preemption. Since appellant's challenges raise questions concerning the PSC's subject matter jurisdiction, they must be addressed on their merits. Jurisdiction may be questioned at any time. Merritt v. Merritt, Wyo. 1978, 586 P.2d 550, 555.
First, as to appellant's statutory argument that the PSC lacked jurisdiction to impose conditions upon the grant of a certificate of convenience and necessity, the language of § 37-2-205(a), W.S. 1977, indicates that he is erroneous. It states in part that where a conflict between two utilities may result, the PSC "may after hearing make such order and prescribe the terms and conditions for the location of the lines, plants or systems affected, * * * [which] are just and reasonable." Further, as observed by this court previously, "[t]he discretion vested in the commission by the statute is broad indeed * * *." Big Horn Rural Elec. Co. v. Pacific Power & Light *572 Co., Wyo. 1964, 397 P.2d 455, 458. Thus, we conclude that the statute granted the PSC the authority to impose the various conditions imposed in this case.
Next, we must consider whether the exercise of this jurisdiction has been barred under the doctrine of federal preemption  which results from the Supremacy Clause, Art. VI, clause 2 of the United States Constitution.[3] In Florida Lime and Avocado Growers, Inc. v. Paul, 1963, 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248, it was observed by the Supreme Court that:
"The principle to be derived from our decisions is that federal regulation of a field of commerce should not be deemed preemptive of state regulatory power in the absence of persuasive reasons  either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained. * * *"
The Court in that case following its observation then looked at three criteria in order to make its determination. First, it considered whether it was possible for one engaged in interstate commerce to comply with both the federal and the state regulations. Second, it pondered upon the question of how important it was that there be national uniformity  without any state variations  in the regulation of the subject matter in question. Third, the Court investigated what Congress had intended when it established the federal regulation. Here, the Court noted that the presumption was against Federal preemption unless Congress had manifested a clear intent to the contrary.
This case was followed in ATS Mobile Telephone, Inc. v. Curtin Call Communications, Inc., 1975, 194 Neb. 404, 232 N.W.2d 248,[4] where the question was whether the Nebraska PSC had jurisdiction to regulate radio common carriers. The Nebraska Supreme Court, after applying the three-prong test, concluded no federal preemption had occurred and that the Nebraska PSC had good jurisdiction.
We agree with the conclusion that there has been no federal preemption. First, the parties can comply with both the PSC's and FCC's rules and regulations. Second, there is no reason for federally imposed uniformity in the regulation of radio common carriers. As said by the Nebraska Supreme Court, "it is clear that the mobile radio telephone paging service is local in nature and there is no need for national uniformity." ATS Mobile Tel. v. Curtin Call Comm., Inc., supra, 232 N.W.2d at 253. Finally, Congress had expressed an intent not to preempt the area. In 47 U.S.C. § 221(b), it was stated:
"(b) Subject to the provisions of section 301 of this title, nothing in this chapter shall be construed to apply, or to give the Commission jurisdiction, with respect to charges, classifications, practices, services, facilities, or regulations for or in connection with wire, mobile, or point-to-point radio telephone exchange service, or any combination thereof, even though a portion of such exchange service constitutes interstate or foreign communication, in any case where such matters are subject to regulation by a State commission or by local governmental authority." (Emphasis added.)
Courts have generally recognized that this language "is a clear statement that Congress did not intend to preempt state regulation of mobile carriers * * *." Fields v. Davis, 1977, 31 Or. App. 607, 571 P.2d 511, *573 516. As a result we must uphold the PSC's jurisdiction to regulate radio common carriers by imposing conditions on the grant of a certificate of public convenience and necessity. See also Matter of Rule Radiophone Service, Inc., Wyo. 1980, 621 P.2d 241.
Appellant's final claim is that the PSC "without a basis in fact or law arbitrarily and capriciously reduced Industrial Communication's service area granted in 1977." However the PSC, when it noticed the setting of the matter for hearing in 1979, informed both appellant and Commercial that they would be required to bear the "burden of producing sufficient evidence to show why their respective certificates of November 29, 1977 should not be revoked, altered or amended in any manner as may be required in the public interest."
First, the PSC found that the order of November 29, 1977 incorrectly included Sublette County in appellant's service area. It is clear that the Commission has continuing jurisdiction over public utilities and thus the power to amend certificates of public necessity and convenience. Big Horn Rural Elec. Co. v. Pacific Power & Light Co., supra, 397 P.2d at 461. It is only proper that the PSC should have the ability to correct a previous order which contained a mistake. Besl Corp. v. Public Utilities Commission, 1976, 45 Ohio St.2d 146, 341 N.E.2d 835.
As to other reductions in appellant's service area, the PSC had given notice that it was reviewing appellant's certificate and that appellant had the burden of demonstrating that it should not be revoked. The evidence presented to the PSC was conflicting as to what interference might exist between appellant's services and Commercial's. The Commission's conclusion that the best way to resolve the matter was to reduce the service areas was supported by substantial evidence that appellant's and Commercial's operations overlapped and the operations of each were interfering with the other contrary to the public interest. Therefore, this court cannot substitute its judgment on this issue for that of the PSC's. Sage Club, Inc. v. Employment Security Commission of Wyoming, Wyo. 1979, 601 P.2d 1306. The ultimate weight to be given evidence before the PSC as a trier of fact is to be determined in the light of the expertise and experience of the members of that agency. Matter of Rule Radiophone Service, Inc., supra.
Affirmed.
NOTES
[*] Retired March 26, 1981, but continued to participate in the decision of the court in this case pursuant to order of the court entered March 30, 1981.
[1] Radio common carriers generally provide mobile telephone service and on occasion paging services such as beepers.
[2] Radio common carriers are public utilities as defined by § 37-1-101(a)(vi)(B), W.S. 1977:

"(vi) `Public utility' means and includes every person that owns, operates, leases, controls, or has power to operate, lease or control:
* * * * * *
"(B) Any plant, property or facility for the transmission to or for the public of telephone messages, for the conveyance or transmission to or for the public of telegraph messages, or for the furnishing of facilities to or for the public for the transmission of intelligence by electricity;"
[3] Art. VI, clause 2, United States Constitution:

"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."
[4] This case was overruled to the extent that it applied to one-way paging devices in ATS Mobile Telephone, Inc. v. General Communications Co., Inc., 1979, 204 Neb. 141, 282 N.W.2d 16. However, for our purposes in dealing with two-way radio telephone service (see appellant's statement of issues, supra), the case is still good law as to the question before us.