VULCRAFT, A DIVISION OF NUCOR CORPORATION, A DELAWARE
CORPORATION, APPELLEE, V. DONNA KARNES, TAX COMMISSIONER
OF THE STATE OF NEBRASKA, ET AL., APPELLANTS.
428 N.W.2d 505

Filed September 2, 1988.   No. 86-1056.

Robert M. Spire, Attorney General, and L. Jay Bartel for appellants.

Michael J. Ogborn and Tim O'Neill, of Nelson & Harding, for appellee.

BOSLAUGH, WHITE, and SHANAHAN, JJ., and SPRAGUE and THOMPSON, D. JJ.

THOMPSON, D.J.

This is an appeal pursuant to Neb. Rev. Stat. § 84-918 (Reissue 1987) from an order of the district court for Lancaster County, Nebraska, overruling the findings and order of the State Tax Commissioner affirming a deficiency assessment against appellee, Vulcraft, a division of Nucor Corporation, for use tax assessed on its purchase and use of argon, carbon dioxide, and oxygen in its steel welding and cutting operations for the period between April of 1981 and April of 1984.

Vulcraft is engaged in the business of manufacturing steel joists, joist girders, steel roof deck, steel floor deck, and cold finish bars at Norfolk, Nebraska. Vulcraft purchases several gases (argon, carbon dioxide, and oxygen) for use in various welding and cutting operations which are part of Vulcraft's manufacturing processes.

On November 30, 1984, the Nebraska Department of Revenue issued a notice of deficiency determination to Vulcraft based, in part, on Vulcraft's failure to pay use tax on these various gases. Vulcraft filed a petition for redetermination in response to this deficiency assessment, and a formal hearing was held on Vulcraft's petition on September 12, 1985. Vulcraft paid $21,152, under protest, which amount included tax, interest, and penalty.

On April 15, 1986, the Tax Commissioner entered her findings and order affirming the deficiency assessment against Vulcraft for use tax due as a result of Vulcraft's purchase and use of argon, carbon dioxide, and oxygen for its welding and cutting operations.

Vulcraft appealed the findings and order of the Tax Commissioner to the district court for Lancaster County.

By order dated November 7, 1986, the district court overruled the findings and order of the Tax Commissioner, finding that the gases used by Vulcraft in its manufacturing processes qualified for exemption under Neb. Rev. Stat. § 77-2704(1)(k) (Supp. 1983) and its predecessors. Appellants subsequently perfected their appeal.

The standard for review is governed by § 84-918, and is de novo on the record of the agency. *Haeffner v. State*, 220 Neb. 560, 371 N.W.2d 658 (1985).

The issue before the Tax Commissioner was whether the argon, carbon dioxide, and oxygen gases used by Vulcraft during its manufacturing processes were entitled to the exemption under § 77-2704.

Section 77-2704 provided as follows:

(1) There are exempted from the computation of the amount of sales and use taxes imposed by sections 77-2701 to 77-27,135 the gross receipts from the sale, lease, or rental of and the storage, use, or other consumption in this state of the following:

. . . .

(k) Sales and purchases of electricity, coal, gas, fuel oil, diesel fuel, tractor fuel, propane, gasoline, coke, nuclear fuel, and butane for use in processing, manufacturing, mining, refining, irrigation, farming, building

> construction, telegraph, telephone and radio
> communication, street, and railroad transportation
> services and all business, commercial and industrial uses . .
> . .

Where words of a statute are plain and unambiguous, no interpretation is needed to ascertain their meaning, and in the absence of anything to indicate the contrary, words will be given their ordinary meaning. *Clinchard v. White*, 223 Neb. 139, 388 N.W.2d 477 (1986).

Statutes exempting property from taxation are to be strictly construed, and the burden of proving the right to exemption is upon the claimant. *United Way v. Douglas Co. Bd. of Equal.*, 215 Neb. 1, 337 N.W.2d 103 (1983). Nebraska Department of Revenue ruling No. 1-78-16 (Dec. 29, 1978), considering the above exemption, stated as follows:

> For an artificial or natural gas to qualify for the sales
> and use tax exemption it must be used as a power or energy
> source by the business or industry. Gases such as, but not
> limited to, freon, oxygen, carbon dioxide, anhydrous
> ammonia, chlorine gas, and gas used to slaughter cattle
> are not a power or energy source within the intent of the
> Act. Such gases are not exempt from sales and use tax even
> though purchased for business, commercial, or industrial
> use.

There is a general rule of statutory construction that the interpretation of a statute given by an administrative agency to which the statute is directed is entitled to weight. *ATS Mobile Tel., Inc. v. Curtin Call Communications, Inc.*, 194 Neb. 404, 232 N.W.2d 248 (1975); *McCaul v. American Savings Co.*, 213 Neb. 841, 331 N.W.2d 795 (1983).

Upon reviewing the record, there is no question that argon, carbon dioxide, and oxygen are "gases" in the generic sense of the word. The issue is whether each gas is a power or energy source as used in Vulcraft's business, since the plain meaning of the statute deals with power or energy sources.

CARBON DIOXIDE AND ARGON

The testimony presented at the hearing shows that in the welding process carbon dioxide and argon are used. A welding gun utilizes heat supplied by combustible gas, a filler consisting

of welding wire, and the gases. The wire comes out through a tube in the gun. The gases come out through a hollow tube that surrounds the wire. The combustible gas is lit, producing flame, and is applied to the area sought to be welded. The gases act as a shielding process to keep oxygen and the outside atmosphere away, thereby protecting the weld.

The weld is made by the wire's melting into the metal pieces sought to be joined. Argon and carbon dioxide do not burn and therefore are not a fuel source, nor can they be categorized as a power or energy source.

The court finds that these gases do not qualify as exempt under the above-cited statute.

### OXYGEN

A more difficult determination deals with the oxygen. Oxygen is used in the metal cutting process. An "oxyfuel" cutting torch is used in this process. Two hoses run to the torch, one supplying natural gas and one supplying oxygen. The torch is lit, and, supplied by the natural gas, the area sought to be cut is heated. Once heated to a sufficient degree, the oxygen is applied, and through a chemical reaction the cut is made. Dr. William Nyle Weins, an associate professor of engineering at the University of Nebraska, testified on behalf of Vulcraft, as follows:

> The steel itself, when it's going to be cut, is preheated to 1400 to 1600 degrees Fahrenehit [sic]. At that point the hot steel, or in this case, the iron is the element that we're concerned about, is brought into contact with pure oxygen and the result is the formation of iron oxide . . . . That reaction is an exothermic [reaction] in that heat is given off in the process. The heat given off is sufficient to melt the steel at that location as well as to preheat the plate to sustain the reaction, so once the reaction starts it's a self sustaining reaction, and so the oxygen is the missing element that is added to this process and thus it is the fuel for this cutting process.

Dr. Weins also testified that the oxygen was the power source for the cutting operation.

Dr. James Carr, a professor with the chemistry department of the University of Nebraska, was called on behalf of the

appellants. He testified that oxygen does not burn and is not a fuel or a power source. On cross-examination, the following occurred:

MR. OGBORN: When this cutting action occurs with the oxygen, is there heat released?

DR. CARR: Yes.

MR. OGBORN: Isn't it the heat that is the power source, the actual cut that's made through that steel?

DR. CARR: I would say that the heat is the power, it's not the power source, the . . .

MR. OGBORN: The heat is the power to make the cut?

DR. CARR: The oxidation reaction is the power source, which generates the heat to make the cut.

MR. OGBORN: Of which the oxygen is a very important component part.

DR. CARR: Of which the oxygen is necessary.

MR. OGBORN: In fact, it could not happen without that stream of oxygen for that cut of that steel like Vulcraft does it.

DR. CARR: That's right, you cannot cut steel without high temperature and without the oxygen, if you're using a flame cutting approach, of course.

The court finds that the oxygen used in Vulcraft's business is exempt under § 77-2704.

The decision of the district court is affirmed in part and reversed in part, and the cause is remanded to the district court with instructions to remand the cause to the Nebraska Department of Revenue to enter an order in conformity with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.