REQUESTED BY: Senator M. L. Dierks Nebraska Legislature
You have requested our opinion regarding the interpretation of the exemption from sales and use tax for "feed, water, veterinary medicines, and agricultural chemicals for consumption by, to be used on, or which are otherwise used in caring for" certain forms of "animal life" resulting from the enactment of 1996 Neb. Laws, LB 106. § 1. Specifically, you ask whether "ratite birds" (including ostriches, emus, rheas, kiwis, and cassowaries) and "domesticated cervine animals" (including elk, deer, or other members of the cervidae family) are forms of "animal life" within the meaning of § 1 of LB 106.
Section 1 of LB 106 provides, in its entirety, as follows:
 (1) Sales and use taxes shall not be imposed on the gross receipts from the sale, lease, or rental of and the storage, use, or other consumption in this state of feed, water, veterinary medicines, and agricultural chemicals for consumption by, to be used on, or which are otherwise used in caring for any form of animal life of a kind the products of which ordinarily constitute food for human consumption or of a kind the pelts of which ordinarily are used for human apparel. (emphasis added).
You have provided a copy of a letter from the State Tax Commissioner outlining the Department of Revenue's position that "ratites" and "domesticated cervine animals" are not forms of "animal life" within the meaning of § 1 of LB 106, as the products of these animals do not "ordinarily constitute food for human consumption".[1] You indicate that, if this interpretation is correct, you "contemplat[e] introducing legislation to clarify that ratite birds and cervine species defined as livestock by section 54-701.03 are included within the meaning of animal life described in section 1 of LB 106. . . ."
Statutory language should generally be given its plain and ordinary meaning and where the words of the statute are plain, direct and unambiguous, no interpretation is necessary to ascertain their meaning. Sorensen v. Meyer, 220 Neb. 457,370 N.W.2d 173 (1985). "In the construction of a statute, no sentence, clause, or word should be rejected as meaningless or superfluous; rather, the plain and ordinary meaning of the language employed should be taken into account in order to determine the legislative will." Weiss v. Union Ins.Co., 202 Neb. 469, 473, 276 N.W.2d 88, 92 (1979). It is inappropriate to read a meaning into a statute which is not warranted by the legislative language. Anderson v.Autocrat Corp., 194 Neb. 278, 231 N.W.2d 560 (1975). Statutes conferring exemptions from taxation "are strictly construed, and their operation will not be extended by construction." Omaha Public Power Dist. v. Nebraska Dept.of Revenue, 248 Neb. 518, 519, 537 N.W.2d 312, 314 (1995). The interpretation of a statute by the administrative agency to which it is directed is entitled to weight. Vulcraft v.Karnes, 229 Neb. 676, 428 N.W.2d 505 (1988).
Prior to the adoption of § 1 of LB 106, the Nebraska Revenue Act provided an exemption for "[f]eed for any form of animal life or water which [was] supplied for consumption by animal life or which [was] otherwise used in caring for animal life of a kind the products of which ordinarily constitute food for human consumption or of a kind the pelts of which ordinarily [were] used for human apparel." Neb. Rev. Stat. §77-2702.12(2)(b)(ii) (Supp. 1995) (repealed 1996 Neb. Laws, LB 106, § 6). LB 106 was intended to "exempt the sale of veterinary medicines and agricultural chemicals used in the production and care of animals from which human food and apparel are derived (i.e. livestock)." Committee Records on LB106, 94th Neb. Leg., 1st Sess. (Introducer's Statement of Intent) (February 16, 1995). The previously existing exemptions for sales of feed and water consumed by or used in caring for "animal life" were combined with sales of veterinary medicines and agricultural chemicals consumed by or used in caring for "animal life" in § 1 of LB 106. Section 1 of LB 106 retained the prior language providing that the sale or use of these items is exempt only if consumed by or used in caring for "animal life of a kind the products of which ordinarily constitute food for human consumption or of a kind the pelts of which ordinarily are used for human apparel."
The Tax Commissioner, in his letter outlining the Department's interpretation of the exemption in § 1 of LB 106 for sales of feed, water, veterinary medicines, and agricultural chemicals consumed by or used in caring for certain forms of animal life, states it is the Department's position that the sale or use of these items for consumption by or use in caring for ratites and domesticated cervine animals does not qualify for exemption. The Department's interpretation is based on its conclusion that the products of these forms of animal life do not "ordinarily" constitute food for human consumption.
While products of certain ratite species or members of the cervidae family may be used as food for human consumption, it appears to us that, consistent with the Department's position, products of these forms of animal life are not "ordinarily" used to provide food for human consumption. The word "ordinarily" is defined to mean "usually; as a rule; in most cases; . . . ." Webster's New Universal Unabridged Dictionary 1259 (2d ed. 1983). We are unable to disagree with the Department's conclusion that, at present, the products of such animals "usually", or "in most cases", do not constitute food for human consumption.
This interpretation is consistent with the Department's regulation construing the meaning of the term "animal life" under § 77-2702.13. Sales and Use Tax Reg-1-062 provides:
 062.01 Sales of any form of animal life, the products of which ordinarily constitute food for human consumption, are exempt from the sales tax. Cattle, sheep, swine, baby chicks, turkey poults, and bees are examples of exempt forms of animal life.
 062.02 Purchases of animal life the products of which do not constitute food for human consumption, such as cats, dogs, mules, zebra, mink, parakeets, penguins, and canaries, chinchillas, horses, etc., are examples of taxable forms of animal life. Purchases of taxable forms of animal life are taxable to the purchaser even when such animal life is purchased for breeding purposes.
While Reg-1-062 is directed to the exemption of sales of "animal life" under Neb. Rev. Stat. § 77-2702.13(2)(b)(i) (Supp. 1995), the language in this subsection is identical to that used in § 1 of LB 106, to the extent that it pertains only to animal life "of a kind the products of which ordinarily constitute food for human consumption." The Department's regulation, and its interpretation of the term "animal life" in § 1 of LB 106, both recognize that products of certain forms of animal life, while they may occasionally be consumed by humans, do not ordinarily constitute food for human consumption. The Department's determination that products of ratites and domesticated cervine animals do not ordinarily constitute food for human consumption is in accord with the language employed by the Legislature, and is consistent with the rule that exemptions from taxation should be narrowly construed. The interpretation adopted by the Department is entitled to weight, and we cannot say that it is incorrect.
In your request, you make reference to the definition of "livestock" in Neb. Rev. Stat. § 54-701.03 (Supp. 1995). In 1995, the definition of "livestock" in § 54-701.03 was amended to include "domesticated cervine animals" (defined to mean elk, deer, or other members of the family cervidae) and "ratite birds" (defined to mean ostriches, emus, rheas, kiwis, or cassowaries). 1995 Neb. Laws, LB 718, § 6. The fact that the definition of "livestock" in § 54-701.03 was amended to include domesticated cervine animals and ratites, however, has no bearing on the interpretation of the exemption contained in § 1 of LB 106.
The addition of domesticated cervine animals and ratites to the definition of "livestock" in § 54-701.03 was enacted to place regulatory authority over such animals with the Department of Agriculture. Committee Records on LB 718, 94th Leg., 1st Sess., (Introducer's Statement of Intent) (February 14, 1995). Section 54-701.03 specifically provides that the definitions contained therein apply only "[f]or purposes of sections 54-701 to 54-705 and 54-742 to 54-753.05". There is nothing in the language or history of LB 718 which indicates an intent by the Legislature to alter the scope of the sales and use tax exemptions contained in § 77-2702.13(2)(b).
Indeed, a review of the history of LB 718 indicates that, as the Department has determined, products of ratite birds and domesticated cervine animals do not, at present, "ordinarily constitute food for human consumption." Various individuals involved in the ratite industry testified that development of a commercial market for ratite meat is in its infancy, indicating that products of these animals are not, at present, "ordinarily" used as food for human consumption. Committee Records on LB718, at 14-19; 24-34; 46-47. Similar testimony was presented by individuals involved in raising animals of the family cervidae (primarily elk), indicating that domestic production of such meat for consumption by humans is not, at this time, economically viable. Id. at 19-20; 34; 38-39; 40-41; 47-48, 53; 54-55; 62. Thus, products of such animals are apparently not, at present, "ordinarily" used as food for human consumption. This testimony further bolsters the Department's interpretation of the scope of the exemption in § 1 of LB 106.
In conclusion, it is our opinion that the Department of Revenue is correct in its interpretation that "ratite birds" and "domesticated cervine animals" are not forms of "animal life" within the meaning of the exemption from sales and use tax contained in § 1 of LB 106, as products of these animals do not "ordinarily constitute food for human consumption." Thus, if you wish to add these animals to the forms of "animal life" covered by the exemption, further legislative action is required.
Very truly yours,
 DON STENBERG Attorney General
 L. Jay Bartel Assistant Attorney General
cc: Patrick J. O'Donnell Clerk of the Legislature
APPROVED BY:
Don Stenberg
DON STENBERG, Attorney General
[1] While not specifically addressed in the Commissioner's letter, it appears that the Department also takes the position that ratites and domesticated cervine animals do not fall qualify as a form of animal life "of a kind the pelts of which ordinarily are used for human apparel". Your request does not indicate that you believe that this portion of the statute is applicable to these species.