REQUESTED BY: Mary Jane Egr, State Tax Commissioner
In connection with a claim filed for ethanol production credits you have requested an Attorney General's Opinion regarding the calculation of production credits for "expansion gallon" ethanol producers. Specifically, you have asked whether the Department of Revenue is "correct in our analysis that apportioning the expansion gallons on a daily basis is not a valid method to determine the receipt of ethanol production credits, but that instead the annual name plate design capacity must first be surpassed in its entirety to receive any credits?".
 FACTS
Based on information provided by your office, the facts pertinent to the question presented are as follows: In August of 1992, the State of Nebraska (through the Nebraska Department of Revenue) entered into an Ethanol Production Credit Agreement with Minnesota Corn Processors (hereinafter "MCP"). The contract provided that the original name plate design capacity (the original designed capacity of an agricultural production facility specified in gallons of ethanol produced per year) for MCP's ethanol production facility was thirty million gallons and that MCP would be eligible to receive production credits under the program through December 31, 1997.
Subsequently, MCP expanded the production capability of its ethanol facility. This led to the State and MCP agreeing to an amendment to the prior agreement which was executed in February of 1997. The amendment provided that the name plate design capacity for the plant had increased to eighty million gallons because of the plant expansion which occurred in June of 1994. Furthermore, the amendment extended the period for which MCP would be eligible to claim credits under the program through June 30, 1999. The amendment was drafted in accordance with Neb. Rev. Stat. § 66-1344(4) (1996), which provides:
 Any ethanol facility eligible for a credit under subsection (1), (2) or (3) of this section shall also receive a credit of twenty cents per gallon of ethanol produced in excess of the original name plate design capacity which results from expansion of the facility completed on or before December 31, 1995. Such credit shall be for sixty months beginning with the first month for which production from the expanded facility is eligible to receive such credit and ending not later than December 31, 2000.
MCP has now filed a Claim for Nebraska Ethanol Production Credit, Form 92, for the months of January and February of 1999. Since the ability to claim credits under the original agreement expired on December 31, 1997, this claim as well as any subsequent claims must be based on credits related to production which resulted from plant expansion. In other words, the ethanol gallons claimed must relate to gallons produced in excess of the original thirty million gallon name plate design capacity. MCP calculated this claim as follows: First, it divided the thirty million gallon annual name plate design capacity by 365 to arrive at a daily name plate design threshold of 82,192 gallons. Then it took the daily threshold and applied it to the number of days in January and February to arrive at a two month threshold of 4,849,328 gallons. It then subtracted this threshold or "floor" amount from the actual ethanol production for the two months to arrive at the number of expansion gallons. Using the twenty cent per gallon credit for expansion gallons MCP submitted a credit claim for these gallons. In using this allocation procedure, MCP seems to be relying on the language contained in § 66-1344(4) where it states "beginning with the first month for which production from the expanded facility is eligible to receive such credit."
 Department of Revenue Interpretation
Your opinion request letter contains extensive analysis and administrative interpretation of the relevant statutory scheme by the Department of Revenue. Because of the significance of this analysis in the context of the legal issues involved, we will set forth this administrative interpretation in detail.
It is our belief that an allocation procedure like the one employed here is not permitted under the statute. In the Department's view, the language allowing a producer to "receive a credit of twenty cents per gallon of ethanol produced in excess of the original name plate designcapacity which results from expansion of the facility" was only intended to allow credits after the original name plate design capacity had been attained. This means for any given year, MCP must first produce thirty million gallons of ethanol before submitting any claims for credits related to expansion gallons. Once that plateau is reached, it would be allowed to fully claim its production rather than relying on an allocation.
Furthermore, we believe MCP's reliance on "beginning with the first month for which production from the expanded facility is eligible to receive such credit" is misplaced. This language does not appear to have any bearing on the issue of when MCP is entitled to receive credits under the program each year. Instead, it appears to clarify the measuring period over which it is entitled to participate in the program. The first month for which it was eligible to receive expansion credits was back in June of 1994 when it completed the required plant expansion. Once than initial date was determined, it was then eligible to receive credits under the statute for a period of sixty months, but no later than December 31, 2000. In MCP's case, the sixty months expires on June 30, 1999. This is precisely what the amendment provides.
The Department is of the position that the claim for credit for the months of January and February of 1999 should be denied because the thirty million gallon name plate design capacity has not yet been reached.
. . .
This is not the first time this question has presented itself. In 1998, both MCP and another ethanol producer attempted to accelerate their receipt of credits under the program by using methods to calculate expansion gallons which were different than that used by the Department. In both cases, the Department denied the claims and the companies complied.
. . .
There is one final factor of which you should be aware. Several years ago, the Department took the position that an allocation procedure for determining production of ethanol gallons was appropriate for ethanol producers for purposes of qualifying for the ethanol program. Neb. Rev. Stat. §66-1344(3) (1996) provides, in part:
 Any ethanol facility which is not in production on or before December 31, 1992, but which is in production at the rate of at least twenty-five percent of its name plate design capacity for the production of ethanol, before denaturing, on or before December 31, 1995, shall receive a credit of twenty cents per gallon of ethanol produced . . .
In the latter part of 1995, there were a few producers who were just beginning production and would have had difficulty establishing that they had complied with the production requirements of this subsection by the given deadline if the production were determined on an annual basis. However, the statute contemplated this situation where it allowed production on a pro rata basis by stating that a company must be in production at the rate of at least twenty-five percent of its name plate design capacity by December 31, 1995. No such language contemplating allocation or pro rata apportionment is found in subsection (4) where expansion gallons are discussed. Therefore, we believe it was appropriate to allow an allocation method for the purpose of qualifying for the credit program, but to disallow such a method for the purpose of actually receiving credits.
 Analysis
In construing statutes, Nebraska courts accord deference to interpretation and application of legislative acts by administrative agencies and officers charged with enforcement of the statutory provisions. Vulcraft v. Karnes, 229 Neb. 676,428 N.W.2d 505 (1988). Such rulings and interpretations by an administrative agency to which the statute is directed are entitled to weight in any judicial review. ATS Mobile Tele.,Inc. v. Curtin Call Communications, Inc., 194 Neb. 404,232 N.W.2d 248 (1975).
As we stated in Opinion Attorney General No. 225 (Aug. 15, 1984), as a general rule, courts will show deference or give weight to the interpretation of a statute by an agency charged with its administration and enforcement. 73 C.J.S. PublicAdministrative Law and Procedure, § 67, pp. 537-540 (1983) SeeMcCaul v. American Savings Co., 213 Neb. 841, 331 N.W.2d 795
(1983). The function of placing a definition on a particular statutory term of legislation enforced by an agency should rest initially with the appropriate administrative body. Zuber v.Allen, 396 U.S. 168 (1969). While the court is not bound by a construction placed on a statute by an administrative agency,Skidmore v. Swift Co., 323 U.S. 134 (1944), an administrative interpretation of a statute will not generally be interfered with unless there are compelling indications that it is wrong, E. I.Du Pont de Nemours Co. v. Collins, 432 U.S. 438 (1977), or unlawful. Peterson v. Vinal, 225 F. Supp. 478 (D.Neb. 1964).
Applying these principles, we believe the construction of the applicable statutory provisions by the Department of Revenue is reasonable and, in our opinion, is the correct reading of the law. Annual name plate capacity must first be surpassed in its entirety before an ethanol producer may receive any expansion gallon production credits.
Sincerely,
 DON STENBERG Attorney General
 Steve Grasz Deputy Attorney General
APPROVED BY:
Don Stenberg 
Attorney General