REQUESTED BY: Kate Witek, Auditor of Public Accounts
You have requested an opinion of the Attorney General concerning whether the Nebraska Public Employees Retirement Systems (NPERS) "lawfully" issued dividends for the cash balance benefit plans under the State and County Employees Retirement Systems. The specific issue raised by your query is whether the Public Employees Retirement Board, the administrator of the state and county employees retirement plans, has requisite authority to issue and pay dividends to members' accounts participating in the cash balance benefit plans. For the reasons set forth below, we conclude that the Public Employees Retirement Board has implicit authority to disburse excess earnings of plan assets, not needed to maintain required reserves, to cash balance benefit accounts in the form of a dividend.
I. Cash Balance Benefit Plans
The Nebraska Legislature established a new type of retirement plan, termed "cash balance benefit" for use in the State and County Employees Retirement Systems by passage of LB 687, Laws 2002. Briefly described, a cash balance benefit plan guarantees participating members a certain contribution level, usually a percentage of salary, plus a fixed rate of return. Campbell v. BankBoston, N.A., 327 F.3d 1, 4 (1st Cir. 2003).
The cash balance plans implemented by NPERS offer participating members an account balance based on contributions to which is credited an amount (interest credit) equal to the greater of five percent (5%) or the applicable federal mid-term rate, as published by the Internal Revenue Serv ice, plus one and one half percent (1½%) compounded annually. Neb. Rev. Stat. §§ 84-1309.02
(Supp. 2005), 84-1301(18) (Cum. Supp. 2004), 23-2308.01 (Supp. 2005), and 23-2301(19) (Cum. Supp. 2004). Interest credit amounts are credited daily to employee and employer accounts under the provisions of Neb. Rev. Stat. §§ 84-1301(19) (Cum. Supp. 2004) and 23-2301(20) (Cum. Supp. 2004).[1]
Under the cash balance benefit provisions, state and county employees could elect participation in the plans with an operative date of January 1, 2003. Members employed and participating in the retirement systems on and after January 1, 2003 automatically participate in the cash balance benefit plans under the provisions of §§ 84-1309.02 and 23-2308.01.
II. Authority of the Public Employees Retirement Board
NPERS is the agency established for the administration of retirement systems provided for in the County Employees Retirement Act, the Judges Retirement Act, the Nebraska State Patrol Retirement Act, the School Employees Retirement Act, and the State Employees Retirement Act under the direction of the Public Employees Retirement Board. Neb. Rev. Stat. § 84-1503
(2005). In addition to the responsibility for the general administration of the retirement systems, the Retirement Board is required "[t]o adopt and promulgate rules and regulations for the adjustment of contributions or benefits, which shall include, but not be limited to: (1) the procedures for refunding contributions, adjusting future contributions or benefit payments, and requiring additional contributions or repayment of benefits; . . ." Neb. Rev. Stat. § 84-1503.03 (2005) (emphasis added).
III. Dividend Policy
In administering the retirement systems, the Retirement Board adopted a formal policy stating the procedure for making benefit improvements in cash balance member accounts.[2] The policy addresses benefit improvements for cash balance benefit accounts and in relevant part states:
 • Each year after the annual actuarial valuations results are received the Board will determine, based on the recommendation of the actuary, if a benefit improvement can be made, such as a dividend payment to individual Cash Balance member accounts after allowing for the required ten percent funding reserve within the plan.
If it is determined that the benefit improvement should be a dividend and that sufficient reserves exist, the dividend will be granted as follows:
 • The Board will determine if any dividend can be granted at the earliest possible date following the annual actuarial valuation, but in all cases the dividend will be retroactive to January 1st of that year.
 • The maximum rate of the dividend will be determined based on the difference between the actual rate credited to member accounts during the preceding plan year (outlined by statute as the federal mid-term rate, plus one and one half percent but no less than five percent) and the amount of assets available to grant additional interest and still maintain the statutorily required reserve of no less than ten percent of pension assets.
 • To be eligible for the dividend a member must be actively employed on the date of the distribution of the dividend.
 • If the dividend is not granted until some time after January 1st, the value of the dividend will be credited with interest between the January 1st and the dividend distribution date, using the interest credit rate earned on regular contributions for the same period.
It is apparent from the text of the policy that the Retirement Board considers the cash balance benefit plan to be a hybrid plan comprised of the attributes of a defined benefit plan and a defined contribution plan.[3] That is, cash balance participants accounts are credited with the earnings of the plan assets with a stated minimum rate of return subject to statutory reserve requirements. Accordingly, excess earnings above the greater of five percent or federal mid-term rate plus one and one half percent, not necessary for reserve requirements, may be distributed to participant accounts in the form of a dividend. The Retirement Board implemented the policy by disbursing dividends for the plan years 2003 and 2004 to County Employee Cash Balance Benefit accounts in the amounts $1,845,269.95 and $1,955,988.58, respectively. Dividend amounts for the State Employees Cash Balance Benefit accounts were distributed in the amounts of $6,801,286.65 and $6,845,702.09 for the plan years 2003 and 2004, respectively.
The policy adopted by the Retirement Board is based on the provisions of Neb. Rev. Stat. §§ 23-2317(4)(c) (Cum. Supp. 2004) and 84-1319(4)(c) (Cum. Supp. 2004) which state:
 On the basis of all data in the possession of the retirement board, including such mortality and other tables as are recommended by the actuary engaged by the retirement board and adopted by the retirement board, the retirement board shall not provide for any benefit improvements that would increase the actuarial contribution rate above ninety percent of the actual contribution rate.
(Emphasis added).
We believe that the statutory provisions serve as implicit authority for the Retirement Board to provide benefit improvements to cash balance accounts. There is little question but that a dividend comprised of excess earnings of plan assets distributed to member accounts is a form of benefit improvement. A reasonable inference may be made based on the provisions of §§23-2317(4)(c) and 84-1319(4)(c) that the Retirement Board may make benefit improvements from earnings of plan assets subject to reserve requirements.
The Retirement Board interpreted the statutory provisions to mean that the Board is authorized to make benefit improvements in the form of a dividend distributed to participants accounts. An interpretation given to a statute by an administrative agency to which the statute is directed is entitled to great weight. Vulcraft v. Karnes, 229 Neb. 676, 428 N.W.2d 505 (1988); ATS Mobile Tel. Inc., Omaha v. Curtin Call Communications,194 Neb. 404, 232 N.W.2d 248 (1975). While we have concluded that the Retirement Board has implicit authority to make benefit improvements in the cash balance benefit plans, we concur with your concern that the authorization should be express and clearly stated. Legislative clarification providing for express authority to distribute "excess earnings" in the form of dividends would serve to alleviate any questions regarding the Board's authority.
IV. Conclusion
For the reasons set forth above, we conclude that the Public Employees Retirement Board has implicit authority to distribute excess earnings of cash balance benefit plan assets to participants' accounts as a form of benefit improvement.
Express and specific authority of the Retirement Board to declare and issue dividends set forth in the statutes would resolve any question of the Board's authority and it is recommended that legislative clarification be undertaken for this purpose.
 Sincerely, JON BRUNING Attorney General
 Fredrick F. Neid Assistant Attorney General
 APPROVED: __________________________ Attorney General
[1] Interest credits are defined in 84-1301(19) and 23-2301(20) to mean the amount credited to the employee and employer cash balance accounts at the end of each day. The interest for each account is determined by applying the daily portion of the interest credit rate to the account balance at the end of the previous day.
[2] The Retirement Board premises its funding and benefit improvement policy on annual actuarial valuations. PERB Policy No. 10 (Rvsd. Sept. 2005).
[3] The U.S. Department of Labor describes a Cash Balance Plan as a defined benefit plan that defines the benefit in terms that are more characteristic of a defined contribution plan. In other words, a cash balance plan defines the promised benefit in terms of a stated account balance. In a typical cash balance plan, a participant's account is credited each year with a "pay credit" (such as 5 percent of compensation from his or her employer) and an "interest credit" (either a fixed rate or a variable rate that is linked to an index such as the one-year treasury bill rate). Increases and decreases in the value of the plan's investments do not directly affect the benefit amounts promised to participants. Thus, the investment risks and rewards on plan assets are borne solely by the employer. U.S. Department of Labor-Find It By Topic-Retirement Plans, Benefits Savings at 2, www.dol.gov.